COUNTY OF DANE, Interested Party-Appellant,

v.

RACINE COUNTY, Petitioner-Respondent,

WISCONSIN DEPARTMENT OF HEALTH & SOCIAL SERVICES,
Respondent.

Court of Appeals

*No. 83–1459. Submitted on briefs February 9, 1984.—*
*Decided March 27, 1984.*
(Also reported in 347 N.W.2d 622.)

For the interested party-appellant, the cause was submitted on the briefs of *Glenn L. Henry,* Dane county corporation counsel, and *Cal W. Kornstedt,* assistant corporation counsel.

For the petitioner-respondent, the cause was submitted on the brief of *William F. Bock,* Racine county corporation counsel, and *James T. McMahon,* assistant corporation counsel.

Before Scott, C.J., Brown, P.J., and Nettesheim, J.

NETTESHEIM, J. Dane County appeals from a judgment of the circuit court reversing a decision of the Department of Health and Social Services which charged Racine County for public assistance furnished to James Allen in Dane county from December 26, 1978 to July 1, 1979. The action was commenced by Dane County against Racine County before the Department of Health and Social Services pursuant to the provisions of sec. 49.11(2), Stats. The statute, in relevant part, provides:

RIGHT TO COLLECT FROM PLACE OF SETTLE-MENT. The county or municipality in which the relief recipient has settlement shall be chargeable with relief furnished, *except that no county or municipality may be charged for relief furnished to any recipient who has not resided within such county or municipality during the previous 24 months*. [Emphasis added.]

The statute further provides that where no legal settlement has been established, the county where the assistance is furnished is charged with such assistance. The statute also prescribes the procedure for collection as between the county furnishing assistance and the county of legal settlement. *Id*.

The essential facts in this case are not in dispute. James Allen maintained legal settlement and residence in Racine county prior to December 3, 1975, when he was sentenced to the Wisconsin state prison system. On May 23, 1978, Allen was released on parole and commenced living in Dane county. He received general assistance from Dane county as a dependent person for the period from December 26, 1978 to July 1, 1979.

In holding that Racine County was chargeable under sec. 49.11(2), Stats., for the public assistance furnished to Allen, the Department relied on the definition of "residence" as contained in sec. 49.10(12)(c). The statute provides:

"Residence" is the voluntary concurrence of physical presence with intent to remain in a place of fixed habitation. Physical presence shall be prima facie evidence of intent to remain.

The Department also relied on the holding of *Eau Claire County v. Milwaukee County*, 24 Wis. 2d 292, 296, 128 N.W.2d 666, 669 (1964), which equated "residence" with "domicile." The Department then concluded that the effect of one's inability to acquire a new residence during

incarceration resulted in the retention of his former residence.

In reversing the Department, the trial court reasoned that the twenty-four-month rule set forth in sec. 49.11 (2), Stats., acted as "an absolute limit regarding potential liability for a county with respect to persons who are, by state action alone, confined to a state penal institution." The trial court recognized that sec. 49.10 (4) provides that imprisonment shall not be considered as voluntary residence, serves only to interrupt residence, and does not trigger a change in settlement status.[1] The trial court noted, however, that the twenty-four-month rule of sec. 49.11 (2) was enacted *after* sec. 49.10 (4) and (12) (c), Stats. The trial court further found the twenty-four-month rule of sec. 49.11 (2) to be clear and unambiguous, not requiring the application of judicial rules of construction, and entitled to its ordinary and accepted meaning. The court also acknowledged that reconciliation was necessary between the twenty-four-month rule of sec. 49.11 (2) and the residency/imprisonment considerations of sec. 49.10 (4) and (12) (c).

"Even when a statute appears unambiguous on its face, it can be rendered ambiguous by its interaction with and its relation to other statutes." *State v. White,* 97 Wis. 2d 193, 198, 295 N.W.2d 346, 348 (1980). When an ambiguity in statutory language presents itself, we must

---

[1] Section 49.10 (4), Stats., in relevant part, provides:

Every person (except as otherwise provided in this section) who voluntarily resides in any municipality or county operating on the county system one whole year without receiving aid, either public or private, as a dependent person, gains a legal settlement therein. Residence by a person within this state under the following circumstances shall not be considered as voluntary and shall be considered as interrupted, and no settlement status shall be changed.

. . . .

(e) While under confinement or on probation or parole under the state or federal criminal statutes.

determine the legislative intent from the language of the statute in relation to its scope, history, context, subject matter, and object intended to be accomplished. *Heaton v. Independent Mortuary Corp.*, 97 Wis.2d 379, 394, 294 N.W.2d 15, 23 (1980).

In considering the context of the statutory language, we must determine whether sec. 49.11(2), Stats., can and should be read *in pari materia* with sec. 49.10(4) and (12)(c), Stats. Although sec. 49.10 addresses the various definitions of legal settlement and how it is attained, whereas sec. 49.11 addresses the right of a governmental unit to collect from another for public assistance furnished, both statutes concern themselves with public assistance generally and with legal settlement and residence specifically. Both are contained in the same chapter of the statutes, and both assist in implementing the chapter's goals and policies. We therefore conclude that secs. 49.10 and 49.11 should be read *in pari materia* and that we must harmonize both if possible.

Reading the statutes *in pari materia* does not permit us, however, to superimpose on sec. 49.11(2), Stats., the definition of "residence" as set forth in sec. 49.10 (12)(c). This is because the latter statute expressly limits its definition of "residence" to *that section.*[2]

We must then determine what the legislature intended in sec. 49.11(2), Stats., by its use of the phrase "except that no county or municipality may be charged for relief furnished to any recipient who has not resided within such county or municipality during the previous 24 months." The trial court appropriately noted that this language was enacted after sec. 49.10(12)(c), Stats.

---

[2] Section 49.10(12), Stats., provides, in part: "In addition to the definitions in s. 49.01, the following definitions apply to *this section:* . . . ." [Emphasis added.] At least in this respect, the statute is clear and unambiguous.

"When the legislature enacts a statute, it is presumed to act with full knowledge of the existing laws, including statutes." *Mack v. Joint School District No. 3*, 92 Wis. 2d 476, 489, 285 N.W.2d 604, 610 (1979). When the legislature enacted the twenty-four-month rule in sec. 49.11(2),[3] it had the opportunity to extend the definition of "residence" already recited in sec. 49.10(12)(c) to sec. 49.11(2). It obviously decided not to do so.

Chapter 29 Laws of 1977, the executive budget bill, which created the twenty-four-month rule of sec. 49.11 (2), Stats., carries no specific legislative history as to that section. However, previously proposed, but un-adopted, legislation containing essentially the same language[4] does provide such history.[5] We disagree with Dane County that consideration of these unadopted items of proposed legislation are off limits in seeking the legislative intent as to the adopted legislation. To so hold would deprive us of informative and helpful legis-lative thinking as to legislative intent. Such a rule would limit our consideration only to the ambiguous language of the statute without any legislative history. We judici-ally notice that budget bills in recent times have routinely included non-fiscal matters of substantive law. Often-times, these matters have previously been proposed and legislatively researched. In the face of the legislative history already developed relative to the proposed, but unadopted, legislation pertaining to sec. 49.11(2), Stats., it is not surprising to find that the bill ultimately en-

---

[3] Sec. 578f, Ch. 29, Laws of 1977.

[4] The proposed but unadopted legislation recited a twelve-month rule rather than a twenty-four-month rule.

[5] Reference to the legislature's statement of purpose or its leg-islative history and bill drafting file is appropriate when seeking legislative intent. *Wisconsin Patients Compensation Fund v. St. Paul Fire & Marine Insurance Co.*, 116 Wis. 2d 537, 543–44, 342 N.W.2d 693, 696 (1984).

acted as part of the budget bill carries no specific legislative history on this subject. We therefore conclude that consideration of this legislative history, compiled at a time reasonably near to the passage of the ultimate legislation, dealing with the same subject matter and proposing essentially the same language, is appropriate in determining the legislative intent.

The fiscal note and the Legislative Reference Bureau analysis to 1975 Assembly Bill 682, the Legislative Reference Bureau analysis to 1975 Senate Bill 824, and the fiscal note and Legislative Reference Bureau analysis to 1977 Senate Bill 16 indicate that the purpose of the proposed legislation was to eliminate the inequity of charge-backs to the original place of legal settlement for indefinite periods and to limit the liability of the county or municipality of settlement for the cost of assistance for the period proposed by the bill *after* the recipient had left the county or municipality.[6] This language signals that the legislature wished to fix a point in the past

---

[6] The fiscal note to 1975 Assembly Bill 682 provides, in part, as follows:

Under present law, a relief recipient's place of legal settlement may be charged the cost of general relief furnished by another jurisdiction until a new legal settlement is established elsewhere. This bill limits the liability of the county or municipality of settlement to being charged the cost of general relief only during the immediate 12-month period after the recipient has left the county or municipality.

Legal settlement is interrupted by circumstances listed in s. 49.10(4) but legal settlement status is not changed thereby. The limitation of the municipality or county responsibility based on residence during a period of twelve months immediately preceding the furnishing of relief effectively limits the period during which charge-back provisions apply. By limiting the period to twelve months, this measure eliminates the inequity of charge-backs to the original place of legal settlement for indefinite periods. This charge would have no fiscal impact since the charge-back activity would represent shifting of responsibility rather than increases or decreases in costs. The simplification of charge-back procedures

before which a municipality or county could not be charged back for assistance provided elsewhere. The starting point for computing this period of time was stated to be when the recipient left the county or municipality.

Given this history, the goal of the legislation, its scope, context and subject matter, we conclude that the trial court correctly interpreted the statute as an absolute limit regarding potential liability to a county with respect to persons who are furnished public assistance by another county more than twenty-four months after such person has left his original county of legal settlement and residence. We therefore conclude that Allen did not reside in Racine county, within the meaning of sec. 49.11(2), Stats., during the twenty-four months previous to his receiving public assistance from Dane County.

We conclude that application of the definition of "residence" as set forth in sec. 49.10(12)(c), Stats., to the facts of this case would frustrate the intent of the legislature in enacting the twenty-four-month rule set forth in sec. 49.11(2), Stats. Moreover, the Depart-

---

could reduce overall administrative costs at the local level but would have no fiscal impact at the state level.

. . . .

This measure would simplify charge-back procedures and correct the inequity of charge-backs to municipalities and counties for indefinite periods.

The analysis by the Legislative Reference Bureau to this bill contains the same language.

The analysis by the Legislative Reference Bureau to 1975 Senate Bill 824 also contains essentially the same language.

The analysis by the Legislative Reference Bureau to 1977 Senate Bill 16 provides, in part, as follows:

9) It limits the liability of a municipality for continued payment of relief under the legal settlement law to 12 months after the recipient leaves the municipality.

502

ment's application of the "residence" definition of sec. 49.10 (12) (c), to this factual situation was clearly erroneous because that definition is expressly limited to sec. 49.10. This holding does no violence to the statutory construction rule of *in pari materia,* nor does it put the two statutes on a collision course. Rather, it simply recognizes the legislative intent to define residency in one fashion for purposes of determining legal settlement, sec. 49.10, and in another for purposes of determining liability between governmental units that furnish public assistance, sec. 49.11.

*By the Court.*—Judgment affirmed.