Monti BECKER and Cheryl Becker, his wife, Plaintiffs-Appellants and Cross-Respondents,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY and George Lincoln, Defendants-Respondents and Cross-Appellants.

Court of Appeals

*No. 86–1937. Argued August 27, 1987.—Decided October 7, 1987.*

(Also reported 416 N.W.2d 906.)

805

On behalf of the plaintiffs-appellants-cross-respondents there were briefs and oral argument by *John A. Becker* of *Hanson, Gasiorkiewicz & Becker, S.C.,* of Racine.

On behalf of the defendants-respondents-cross-appellants there were briefs by *Adrian P. Schoone, Russell M. Ware,* and *David M. Victor* of *Schoone, McManus, Hankel, Ware & Fortune, S.C.,* of Racine, with oral argument by *Russell M. Ware.*

Before Scott, C.J., Brown, P.J., and Nettesheim, J.

NETTESHEIM, J.   George Lincoln's dog broke out of its penned enclosure and darted onto a roadway causing a vehicle operated by Cheryl Becker to take evasive action and leave the highway. Becker claimed

injury as a result of the accident. The jury found both Becker and Lincoln not negligent.

Becker appeals, contending that a town of York-ville ordinance prohibiting a dog owner from permitting his dog to run at large constituted negligence per se. Alternatively, Becker contends that Lincoln was negligent as a matter of law under the ordinance. Because the jury was instructed that violation of the town ordinance was negligence per se, because the jury found Lincoln not negligent and because the evidence supports the verdict in this respect, we affirm the judgment insofar as it pertains to any negligence under the ordinance.

Becker also contends that the state "injury by dog" statute then in existence, sec. 174.02, Stats. (1983–84), established strict liability subject only to the defense of comparative negligence. The circuit court held that the state statute did not apply to the "innocent acts" of a dog. We agree with Becker that the state statute imposes strict liability subject only to the defense of comparative negligence. We reverse this portion of the judgment and remand for a new trial as to any negligence by Lincoln under this standard.

Lincoln cross-appeals the post-verdict order of the trial court changing certain damage answers in the verdict from "zero" to various dollar amounts. The trial court concluded that the verdict was perverse. We conclude that the verdict was not perverse (nor inconsistent) and that the evidence supports the jury's findings on these questions. Ultimately, however, we leave the question of the necessity of a retrial on the questions of damages to the discretion of the trial court.

## FACTS

The essential facts concerning liability are not in significant dispute. Lincoln's dog was kept in an enclosure made of cyclone fencing. The animal was permitted to run at large on a daily basis under Lincoln's supervision. The enclosure had a gate with a "U"-type latch that closed over a post. Except for one instance when the dog was a puppy, the animal had never escaped from the pen.[1]

On the day of the accident, Lincoln had let the dog run under his supervision for about half an hour. He then returned the dog to the pen, closed the latch and left the premises to run some errands. Thereafter, the dog escaped and the encounter with the Becker vehicle ensued. The dog died as a result of the accident.

Later, after placing another dog in the pen, Lincoln discovered that some dogs, similar to the one involved in the Becker accident, could stand up in the pen and push open the latch device. This theory was offered at trial as the means by which the dog escaped.

## APPEAL

### The Ordinance

A town of Yorkville ordinance in existence at the time of the accident provided:

No person owning or possessing any dog shall permit the same to run at large; and for the

---

[1]On that occasion, the puppy had squeezed through bars at the bottom of the pen. Lincoln corrected this problem by installing iron stakes at various intervals, rendering it impossible for the animal to escape by this method.

purpose of this section, "running at large" shall be defined to be the presence of a dog any place in the Town except upon the premises of the owner thereof unless such dog is on a leash under the control of the owner or a person who is at least 12 years of age and is authorized by the owner or in an automobile of any other person with the consent of the dog's owner.[2]

Yorkville Ordinance 12.04(2).

Becker first contends that this is a negligence per se ordinance rendering Lincoln negligent as a matter of law. This argument conveniently overlooks that proof of a violation of a negligence per se law is still required and that such procedure was correctly followed by the trial court here. Question No. 1 of the special verdict inquired whether Lincoln was negligent. The trial court instructed the jury as to the requirements of the ordinance. The court concluded this portion of the instructions with the statement, "If you find that the defendant was in violation of this ordinance, you must answer Question No. 1 'yes.'" In answering this question "no," the jury effectively determined that Lincoln had not violated the ordinance. With this answer in place, we need not analyze here whether this ordinance is a negligence per se law.[3]

---

[2]Although a copy of the ordinance was admitted into evidence, the exhibits have not been forwarded to us as part of the appellate record. Therefore, we have previously judicially noticed the town ordinance. *See* sec. 902.03(1)(a), Stats.

[3]By instructing on the ordinance, the trial court appears to have initially concluded that the ordinance was a negligence per se law. However, in its post-verdict decision, the court concluded that the ordinance was not safety legislation designed to protect a specified class of persons from a particular type of harm. *See*

Becker's next argument, although only cursorily addressed, contends that Lincoln was negligent as a matter of law under the ordinance and the facts of this case. A claim that the proofs establish liability as a matter of law is, in essence, a claim that the burden of proof, as a matter of law, has been met. Whether a party has met its burden of proof is a question of law which this court may examine without giving deference to the trial court's conclusion. *Burg v. Miniature Precision Components, Inc.,* 111 Wis. 2d 1, 12, 330 N.W.2d 192, 198 (1983).

We reject Becker's argument that Lincoln was negligent as a matter of law under the ordinance. The ordinance requires that the owner "permit" the dog to run at large. The evidence indicates that Lincoln secured the pen latch after returning the dog to the enclosure. If this evidence warrants any declaration as a matter of law, it might well be that Lincoln complied with the ordinance rather than violated it. At a minimum, a jury question as to Lincoln's alleged negligence existed.

*Leahy v. Kenosha Memorial Hosp.,* 118 Wis. 2d 441, 449, 348 N.W.2d 607, 612 (Ct. App. 1984). Without expressly saying so, the court's post-verdict decision suggests that the "negligence per se" instruction should not have been submitted in the first instance.

Becker also contends that *Wurtzler v. Miller,* 31 Wis. 2d 310, 143 N.W.2d 27 (1966), stands for the proposition that violation of a "dog-at-large" ordinance constitutes negligence per se. *See id.* at 317–18, 143 N.W.2d at 30–31. Again, we note that we need not decide this issue since the jury, armed with a negligence per se instruction, nonetheless found Lincoln not negligent.

■

We next consider whether the ordinance imposes strict liability.[4] Strict liability is a judicial doctrine which relieves a plaintiff from proving specific acts of negligence and protects him from certain defenses. *Meunier v. Ogurek,* 140 Wis. 2d 782, 785, 412 N.W.2d 155, 156 (Ct. App. 1987). This issue requires us to construe the ordinance. This exercise involves a question of law, and we owe no deference to the trial court's conclusion. *City of Madison v. Lange,* 140 Wis. 2d 1, 4, 408 N.W.2d 763, 764 (Ct. App. 1987). On any question of statutory construction we look to the plain meaning of the statute; we look outside the statutory language only if the statute is ambiguous. *Id.* at 4–5, 408 N.W.2d at 764.

■

Thus, our initial task in this case is to determine whether the ordinance unambiguously describes the conditions for liability. *Meunier,* 140 Wis. 2d at 786, 412 N.W.2d at 156–57. Among the ordinance's conditions for liability is proof that the owner *permitted* his dog to run at large. This requirement does not equate with the principle of strict liability which relieves a plaintiff from proving specific acts of negligence. *See id.* at 785, 412 N.W.2d at 156. Therefore, the ordinance is not strict liability legislation.

### The Statute

Becker also requested that the trial court find Lincoln was negligent as a matter of law based upon sec. 174.02, Stats. (1983–84). The court denied Becker's

---

[4]We are uncertain whether Becker actually makes this claim. However, Lincoln construes Becker's argument, in part, in this fashion. We choose, therefore, to address the issue.

request and, in its post-verdict decision, concluded that the statute did not impose liability for the "innocent acts" of a dog. As with her argument on the ordinance issue, Becker contends that the statute creates strict liability against the owner for any injury or damage caused by the dog.

We begin by noting not only the language of the statute under consideration, but also those which preceded and succeeded it.

Section 174.02, Stats. (1981–82), the predecessor statute, read:

> (1) LIABILITY FOR INJURY. (a) Without notice. The owner of a dog *is liable* for the full amount of damages caused by the dog injuring or causing injury to a person, livestock or property. [Emphasis added.]

Section 174.02, Stats. (1983–84), the statute at issue in this case, read:

> (1) LIABILITY FOR INJURY. (a) Without notice. The owner of a dog *may be* liable for the full amount of damages caused by the dog injuring or causing injury to a person, livestock or property. [Emphasis added.]

Section 174.02, Stats., presently provides:

> (1) LIABILITY FOR INJURY. (a) Without notice. Subject to s. 895.045 [the comparative negligence statute], the owner of a dog *is liable* for the full amount of damages caused by the dog injuring or causing injury to a person, livestock or property. [Emphasis added.]

■

Here again we are faced with an issue of statutory construction. We have previously recited in this

opinion the rules we employ when construing a statute in order to determine whether it imposes strict liability. As noted, the threshold task is to determine whether the language of the statute is plain or ambiguous. A statute is ambiguous if reasonable persons can understand it differently. *Tahtinen v. MSI Ins. Co.,* 122 Wis. 2d 158, 166–67, 361 N.W.2d 673, 678 (1985). Whether reasonable persons can disagree on a statute's meaning is a question of law. *St. John Vianney School v. Board of Educ.,* 114 Wis. 2d 140, 150, 336 N.W.2d 387, 391 (Ct. App. 1983). Such questions are decided without regard to the trial court's view. *Meunier,* 140 Wis. 2d at 786, 412 N.W.2d at 157.

Lincoln argues that the "may be liable" language of sec. 174.02, Stats. (1983–84), operated to state nothing more than "time-tested common-law negligence standards." Becker contends that the change from the "is liable" language of the 1981 statute signals a legislative intent to build principles of comparative negligence into injury by dog cases. We think either interpretation is reasonable under the language of the statute. We therefore conclude the statute is ambiguous.

As a result, we turn to an examination of the scope, history, context, subject matter, and object of the statute in order to ascertain the intent of the legislature. *Tahtinen,* 122 Wis. 2d at 166, 361 N.W.2d at 677. Although the parties recite, at length, the history of injury by dog legislation and case law in this state, the *Meunier* case, decided after the trial of this case, determined that the legislature created a strict liability statute by the enactment of the predecessor

statute, sec 174.02, Stats. (1981–82). 140 Wis. 2d at 785–87, 412 N.W.2d at 156–57.[5]

When the legislature enacts a statute, it is presumed to act with full knowledge of the existing laws, including statutes. *County of Dane v. Racine County,* 118 Wis. 2d 494, 499, 347 N.W.2d 622, 625 (Ct. App. 1984). Therefore, in light of the *Meunier* holding that the predecessor statute was strict liability law, the legislative history concerning the enactment of the "may be liable" language of the 1983 successor statute becomes important.

This history includes correspondence from the insurance industry to the Wisconsin Insurance Alliance and the Alliance's resultant correspondence to Senator Carl Otte seeking the amendment. This correspondence reveals the apparent belief and practice by some trial courts that the strict liability provisions of the then-governing statute were being interpreted to preclude application of the principles of comparative negligence. Hence the proposal for the "may be liable" language. No other motivating factor for the change in the statutory language appears from the drafting file and other legislative history. We therefore conclude that the purpose of the amendment of sec. 174.02, Stats. (1983–84), was to clarify that comparative negligence principles applied to the strict liability provisions of the statute.[6]

---

[5]Although the opinion in *Meunier v. Ogurek,* 140 Wis. 2d 782, 412 N.W.2d 155 (Ct. App. 1987), never explicitly states that sec. 174.02, Stats., imposes strict liability, we believe that holding is implicit from the discussion and disposition of the case.

[6]As to any perceived impropriety in looking to correspondence between nonlegislative entities on a matter of statutory construc-

This brings us to the question of whether we should, as the trial court did, carve out an exception to this strict liability statute for instances involving "innocent acts" of a dog.

■ We conclude the very nature of strict liability legislation precludes this approach. Earlier Wisconsin cases which imposed proof requirements of a dog's mischievous nature, *see Chambliss v. Gorelik,* 52 Wis. 2d 523, 530, 191 N.W.2d 34, 37–38 (1971), or scienter on the part of the owner, *see Slinger v. Henneman,* 38 Wis. 504, 511 (1875), were pronounced at a time when dog related injury cases, whether grounded upon statute or common law, were governed by principles of ordinary negligence. However, *Meunier* and this case now hold that these types of actions, when premised upon an "injury by dog" statute, are governed by strict liability principles. As such, we must bear in mind the teaching of *Meunier* that once a statute is determined to impose strict liability, "we may not add more by implication or statutory construction."[7] 140 Wis. 2d at

tion, we note that such practice is now permitted under *Robert Hansen Trucking, Inc. v. LIRC,* 126 Wis. 2d 323, 335, 377 N.W.2d 151, 156 (1985). In *Hansen,* the memorandum relied upon by the supreme court does not even appear to have been included in the drafting file for the legislation. Rather, it was on file with the Bureau of Legal Affairs of the Unemployment Compensation Division of DILHR. *Id.* at 335–36, 377 N.W.2d at 156–57. Here, the correspondence we refer to is part of the drafting record.

[7] *Meunier* states this rule in the context of a statute which the court of appeals found to be unambiguous. Therefore, the court's recital of the rule could be interpreted to mean that it applies only where an unambiguous statute exists. *See Meunier,* 140 Wis. 2d at 786, 412 N.W.2d at 156–57. However, such a limitation of the rule would be absurd since it would permit courts to create exceptions to ambiguous strict liability statutes but not as to unambiguous

786, 412 N.W.2d at 156. Imposition of the exception requested by Lincoln would violate this rule.

Finally, Lincoln contends that failure to create this exception will lead to absurd and unreasonable results in certain hypothetical cases. For instance, Lincoln argues that under a "no exception" strict liability approach, an owner would be liable to a person who trips over a sleeping dog or who is injured when startled by the mere playful barking of a dog. However, strict liability laws, whether they be judicially or legislatively created, result from public policy considerations. *Cf. D.L. v. Huebner,* 110 Wis. 2d 581, 637, 329 N.W.2d 890, 916 (1983). Harshness of result in certain extreme situations is a social price sometimes paid for the perceived benefits of the strict liability policy.

Moreover, we note that the strict liability rule which we recognize in this case is tempered by three considerations: public policy, the rules of comparative negligence and the rules of causation.

■ Liability does not necessarily follow even when negligence and negligence as a cause-in-fact of injury are present; public policy considerations may preclude liability. *Garrett v. City of New Berlin,* 122 Wis. 2d 223, 233, 362 N.W.2d 137, 143 (1985). Public policy reasons for not imposing liability despite a finding of negligence as a substantial factor producing injury are: (1) the injury is too remote from the negligence; or (2) the injury is too wholly out of proportion to the culpability of the negligent tortfeasor; or (3) in retro-

strict liability statutes. If the legislature has created a strict liability statute, the rules regarding its application should be consistent—regardless of the nature of the language used.

spect it appears too highly extraordinary that the negligence should have brought about the harm; or (4) because allowance of recovery would place too unreasonable a burden on the negligent tortfeasor; or (5) because allowance of recovery would be too likely to open the way for fraudulent claims; or (6) allowance for recovery would enter a field that has no sensible or just stopping point. *Morgan v. Pennsylvania Gen. Ins. Co.*, 87 Wis. 2d 723, 737, 275 N.W.2d 660, 667 (1979). These considerations must be addressed on a case-by-case basis. We are not required to decide whether liability should attach under these considerations in the hypothetical situations proposed by Lincoln. We do conclude, however, that they do not preclude liability under the facts here.

In addition, comparative negligence and causation are always relevant in a strict liability case. *Howes v. Deere & Co.*, 71 Wis. 2d 268, 273–74, 238 N.W.2d 76, 80 (1976). Here, we have previously determined that the legislature, by use of the "may be liable" language, intended to explicitly retain comparative negligence procedures in the strict liability provisions of sec. 174.02, Stats. (1983–84). This is done even more explicitly in the current statute by direct reference to the comparative negligence statute. In addition, all three versions of sec. 174.02 mentioned in this opinion specifically require the damages to be caused by the dog.

Therefore, some of the potential abuses feared by Lincoln are tempered by considerations of public policy and application of the rules of comparative negligence and causation. Beyond that, we can only commend Lincoln's concerns to the legislature.

## Conclusion

We affirm the judgment as to the negligence issues relating to the town of Yorkville ordinance. We reverse the judgment as to the negligence issues relating to sec. 174.02, Stats. (1983–84). We remand for a new trial as to liability under the state statute. We leave it to the discretion of the trial court as to whether a new trial should also occur with respect to the question of damages. *Leahy v. Kenosha Memorial Hosp.*, 118 Wis. 2d 441, 453, 348 N.W.2d 607, 614 (Ct. App. 1984). Nonetheless, we proceed to address the damage issue raised on cross-appeal in the event the court chooses not to order a new trial on this question.

## CROSS-APPEAL

### Damages

The jury awarded Becker $5000 for past pain and suffering. However, no damages for wage loss and medical expenses were awarded.[8] Becker argued in her post-verdict motions that these two portions of the verdict answers were perverse and inconsistent. The trial court determined that the verdict was perverse and changed the "zero" answer for wage loss to $5654.40 and the "zero" answer for medical expenses to $2368.25.

The parties have loosely intermingled the terms "perverse" and "inconsistent" in describing this verdict. We view these challenges as separate and distinct and will address them as such.

---

[8] The jury also did not award damages to Becker for future pain and suffering, nor to Becker's spouse for loss of society and companionship.

For a verdict to be perverse, there must be something to warrant a finding that considerations which were ulterior to a reasonably fair application of the jury's judgment to the evidence, under the court's instructions, controlled or materially influenced the jury. *Breunig v. American Family Ins. Co.,* 45 Wis. 2d 536, 545–46, 173 N.W.2d 619, 625 (1970). A verdict is perverse when the jury clearly refuses to follow the direction or instruction of the trial court upon a point of law, or where the verdict reflects highly emotional, inflammatory or immaterial considerations, or an obvious prejudgment with no attempt to be fair. *Redepenning v. Dore,* 56 Wis. 2d 129, 134, 201 N.W.2d 580, 583 (1972).

Under this test for a perverse verdict, Becker's challenge must clearly fail. She points to nothing which even remotely suggests that the jury was acting pursuant to "highly emotional, inflammatory or immaterial considerations" or out of any sense of prejudgment. *Id.*[9] Becker's claim really is that the jury's award of "zero" damages for wage loss and medical expenses is contrary to the evidence. Such challenges

---

[9]Becker also contends that *Fouse v. Persons,* 80 Wis. 2d 390, 259 N.W.2d 92 (1977), supports her argument that the verdict is perverse. A verdict may be so grossly inadequate or excessive as pertains to the amount allowed as damages to be termed perverse particularly where the evidence is susceptible to an exact computation of damages. *Fouse* at 396 n. 9, 259 N.W.2d at 94. Although the language of *Fouse* in describing a perverse verdict is gentler than that of *Redepenning v. Dore,* 56 Wis. 2d 129, 134, 201 N.W.2d 580, 583 (1972), we see nothing in *Fouse* or other post-*Redepenning* cases which negate the requirement of improper and ulterior considerations entering into the jury's consideration of the case.

do not automatically also serve as a basis for a perverse verdict claim.

A closer question is whether the verdict is inconsistent. An inconsistent verdict is one in which the jury answers are logically repugnant to one another. *Fondell v. Lucky Stores, Inc.,* 85 Wis. 2d 220, 228, 270 N.W.2d 205, 210 (1978). Becker reasons that because the jury awarded her damages for pain and suffering, its failure to award her damages for wage loss and medical expenses renders the verdict inconsistent.

While this argument has some facial appeal, it disappears upon an assessment of the evidence. While Becker presented evidence supporting these damage claims, the true issue was the credibility of her claim as to the extent of her injuries *from this accident.* We do not intend to recite the abundance of evidence and the competing inferences presented on both sides of this claim. However, our reading of the record reveals a significant jury question as to whether Becker's claims legitimately related to this accident or were the product of prior medical problems, fabrication or exaggeration.[10]

---

[10]Only by way of example, and without intending to be exhaustive, we observe that Becker made no complaint of injury at the accident scene and played tennis on the evening following the accident; that she gave inconsistent versions as to the time of onset of pain; that Dr. Huron L. Erickson, one of her treating physicians and witnesses, testified ambiguously as to whether he knew at the time of his examination that Becker had previously been treated for headaches and neck pain; that this same witness acknowledged in a deposition that such information constituted relevant data, but then attempted to discount such history in his trial testimony; and that Becker continued her tennis playing after the accident.

A verdict is not inconsistent because it allows damages for medical expenses and denies recovery for personal injuries or pain and suffering. *Jahnke v. Smith,* 56 Wis. 2d 642, 653, 203 N.W.2d 67, 73 (1973). Here, we have the converse—an award for pain and suffering but no award for medical expenses and wage loss. But the rationale for application of the *Jahnke* rule is the same. In *Jahnke,* the supreme court concluded the jury may well have determined that the plaintiff's injuries were de minimis or nonexistent. *Id.* Here, the jury may well have concluded that Becker's wage loss and medical expenses were not related to her injuries in the accident but rather to other causes—an issue which, as we have already noted, essentially boiled down to the jury's assessment of Becker's credibility. In short, these verdict answers were not repugnant to one another.

We conclude that the verdict of the jury was not inconsistent or perverse and is supported by the evidence. We therefore reverse the trial court's order changing these verdict answers and direct that the jury's answers be reinstated.

No costs are awarded to either party.

*By the Court.*—Judgment and order affirmed in part, reversed in part and cause remanded.