Julia COLE, Plaintiff-Appellant,

CITY OF MILWAUKEE, Involuntary-Plaintiff,

v.

Yvonne L. HUBANKS, Aubrey Hubanks, and American Family Mutual Insurance Company, Defendants-Respondents.

Supreme Court

*No. 02–1416. Oral argument October 7, 2003.——Decided June 11, 2004.*

2004 WI 74

(Also reported in 681 N.W.2d 147.)

SYKES, J., dissents.

For the plaintiff-appellant there were briefs by *Jonathan Cermele, Laurie Eggert, Rachel L. Schneider* and *Eggert & Cermele, S.C.,* Milwaukee, and oral argument by *Jonathan Cermele.*

For the defendants-respondents there was a brief by *Janet E. Cain* and *Peterson, Johnson & Murray, S.C.,* Milwaukee, and oral argument by *Janet E. Cain.*

An amicus curiae brief was filed by *John F. Fuchs, Catherine A. Goodman* and *Fuchs DeStefanis Boyle, S.C.,* Milwaukee, on behalf of The Milwaukee Police Association and Police Officers Defense Fund, and there was oral argument by *John F. Fuchs.*

An amicus curiae brief was filed by *Michael T. Leibig,* and *Zwerdling, Paul, Leibig, Kahn & Wolly,*

*P.C.,* Alexandria, VA, and *Richard A. Frederick,* Milwaukee, on behalf of International Union of Police Associations, AFL-CIO, and National Association of Police Organizations.

¶ 1. PATIENCE D. ROGGENSACK, J. Police Officer Julia Cole appeals a Milwaukee County Circuit Court judgment that granted Aubrey and Yvonne Hubanks and their insurer, American Family Mutual Insurance Company, summary judgment, dismissing her personal injury claims against the Hubanks. This case is before us on certification of the following question:

> Whether Wisconsin's "firefighters rule,"[1] that is based on public policy limitations on liability, should be extended to police officers to bar an officer from suing dog owners for injuries the officer received while capturing the dog.

¶ 2. We conclude that public policy reasons do not support extending the firefighters rule to police officers. Therefore, Cole may sue for injuries she received allegedly because of the Hubanks' dog's attack that occurred during the course of Cole's duties as a police officer. Accordingly, we reverse the judgment and remand for further proceedings.

## I. BACKGROUND

¶ 3. Police Officer Julia Cole was on patrol in the City of Milwaukee when she came upon a large dog wandering in the street. The dog still had a chain

---

[1] Wisconsin first employed what has become known as the "firefighters rule" in *Hass v. Chicago & North Western Railway Company,* 48 Wis. 2d 321, 179 N.W.2d 885 (1970). *Hass* precluded liability to firefighters in very limited circumstances. *Id.* at 327.

attached to its collar. Cole grasped the loose end of the chain and began calling the dog toward her. She knelt down as the dog, an Akita estimated to weigh between 85 and 90 pounds, approached her. Without any prior indication of viciousness, the dog lunged at her, knocked her over and bit her on the face and neck. She was able to wrest the dog off of her, but 30 stitches were required to close her wounds.

¶ 4. Cole brought suit against Aubrey and Yvonne Hubanks, the owners of the dog, and their insurance company, American Family, alleging that the Hubanks: (1) negligently cared for and restrained the dog; (2) harbored a dangerous animal; (3) failed to warn the public of the dangerous nature of the dog; and (4) violated Wis. Stat. § 174.02 (2001–02),[2] all causing her injury. The Hubanks moved for summary judgment, contending that the firefighters rule precluded liability. The circuit court agreed and dismissed Cole's claims. Cole appealed, and we accepted certification.

## II. DISCUSSION

A. Standard of Review

¶ 5. The circuit court granted summary judgment to the Hubanks because it concluded they could not be liable to Cole, as a matter of law. We review summary judgments de novo, using the same method as the circuit court. *Sawyer v. Midelfort*, 227 Wis. 2d 124, 135, 595 N.W.2d 423 (1999). In dismissing Cole's claims, the circuit court relied on *Hass v. Chicago & North Western Railway Company*, 48 Wis. 2d 321, 179 N.W.2d 885

---

[2] All subsequent references to the Wisconsin Statutes are to the 2001–02 version unless otherwise indicated.

(1970), that held that public policy factors preclude liability to a firefighter in limited circumstances. Whether public policy factors are a limitation on liability is a question of law, on which we owe no deference to the circuit court. *Beacon Bowl, Inc. v. Wisconsin Elec. Power Co.*, 176 Wis. 2d 740, 761, 501 N.W.2d 788 (1993). And finally, whether a statute that provides for strict liability is also subject to public policy factors is a question of law we decide *de novo*. *See State v. Stoehr*, 134 Wis. 2d 66, 76, 396 N.W.2d 177 (1986).

## B. Firefighters Rule

¶ 6. The firefighters rule developed in Illinois more than 100 years ago, in the landmark case of *Gibson v. Leonard*, 32 N.E. 182 (Ill. 1892). *Gibson* was based on premises liability, wherein a firefighter was classified as a licensee to whom the property owner owed no duty other than to "refrain from willful or affirmative acts which are injurious." *Id.* at 183. Many other jurisdictions have adopted the firefighters rule, some based on assumption of risk[3] or public policy concerns,[4] as well as on premises liability.[5]

---

[3] *See, e.g., Hack v. Gillespie,* 658 N.E.2d 1046, 1050 (Ohio 1996); *Sobanski v. Donahue,* 792 A.2d 57, 59–60 (R.I. 2002); *Martin v. Gaither,* 466 S.E.2d 621, 625 (Ga. App. 1995); *Carpenter v. O'Day,* 562 A.2d 595, 600 (Del. Super. 1988).

[4] *See, e.g., Winn v. Frasher,* 777 P.2d 722, 725 (Idaho 1989); *Pottebaum v. Hinds,* 347 N.W.2d 642, 645 (Iowa 1984); *Flowers v. Rock Creek Terrace Ltd. P'ship,* 520 A.2d 361, 368 (Md. 1987); *Kreski v. Modern Wholesale Elec. Supply Co.,* 415 N.W.2d 178, 186 (Mich. 1987).

[5] *See, e.g., Gibson v. Leonard,* 32 N.E. 182, 183–84 (Ill. 1892); *Kilpatrick v. Sklar,* 548 So. 2d 215, 217 (Fla. 1989).

¶ 7. We first adopted the firefighters rule in 1970 in *Hass*. Our rule was based solely on public policy grounds and was very narrowly drawn. *Hass*, 48 Wis. 2d at 326–27. When we employ public policy factors to preclude a claim for relief, we assume there is negligence and that the negligence was a cause of the injury, but for reasons of public policy, we prevent the claim from proceeding. *See Gould v. American Family Mut. Ins. Co.*, 198 Wis. 2d 450, 460, 543 N.W.2d 282 (1996).

¶ 8. We have identified six public policy considerations that the courts of Wisconsin use to limit liability:

> (1) the injury is too remote from the negligence; or (2) the injury is too wholly out of proportion to the culpability of the negligent tortfeasor; or (3) in retrospect it appears too highly extraordinary that the negligence should have brought about the harm; or (4) because allowance of recovery would place too unreasonable a burden on the negligent tortfeasor; or (5) because allowance of recovery would be too likely to open the way for fraudulent claims; or (6) allowance for recovery would enter a field that has no sensible or just stopping point.

*Becker v. State Farm Mut. Auto. Ins. Co.*, 141 Wis. 2d 804, 817–18, 416 N.W.2d 906 (Ct. App. 1987) (citing *Morgan v. Pennsylvania Gen. Ins. Co.*, 87 Wis. 2d 723, 737, 275 N.W.2d 660 (1979)). A determination that any one of the factors applies to the case at hand is sufficient to preclude liability. *Flint v. O'Connell*, 2002 WI App 112, ¶ 12, 254 Wis. 2d 772, 648 N.W.2d 7. Generally, the application of public policy factors proceeds on a case-by-case basis because claim-specific

facts are often relevant to the analysis. *Bowen v. Lumbermens Mut. Cas. Co.,* 183 Wis. 2d 627, 660, 517 N.W.2d 432 (1994).

¶ 9. In *Hass,* where we precluded a firefighter's claims against a person who negligently started a fire for injuries Hass sustained in fighting the fire, we employed the fourth[6] and sixth[7] public policy factors. *Hass,* 48 Wis. 2d at 327. We explained that nearly all fires are started by negligence. However, to subject a landowner or occupier to liability for such negligence would "place too great a burden" on landowners and occupiers, who should summon the help necessary to extinguish the blaze and prevent its spread to neighboring buildings and property. *Id.* Our concern focused on a greater good to be protected: promoting conduct that would lead to extinguishing a fire before it could spread. However, our relief from liability was very narrowly drawn. We explained that while we were precluding liability for one who negligently starts a fire and the fire causes injury to a firefighter from fighting the fire, we were not "hold[ing] a landowner under no circumstances must respond in damages for his negligence which caused injury to a firefighter upon the premises." *Id.* We cautioned that, "We do not by this decision venture into other areas of negligence where liability is based upon something more than the negligent starting of a fire." *Id.* Liability based upon "something more" became the issue in the next firefighter's case.

---

[6] Recovery would place too unreasonable a burden on the negligent tortfeasor.

[7] Recovery would enter a field that has no sensible or just stopping point.

¶ 10. In *Clark v. Corby*, 75 Wis. 2d 292, 249 N.W.2d 567 (1977), Clark, a fireman, was injured fighting a fire when he became trapped in Corby's basement bedroom, built contrary to building code. *Id.* at 299. He sued, alleging negligence in starting the fire, negligence in failing to warn of hidden hazards and negligence in building a basement bedroom that did not conform to the building code. *Id.* at 293–94. We concluded that *Hass* controlled on Clark's claim of negligence in starting the fire; however, we also concluded that the landowner had a duty to warn firefighters when: (1) there is a hidden hazard (that we defined as "a concealed danger that foreseeably created an unreasonable risk to others"); (2) the hidden hazard or danger is known to the landowner, but (3) is not known to or observable by the firefighter; and (4) there is a "clear opportunity" for the landowner to provide a warning. *Id.* at 298. We noted that public policy concerns did not preclude liability for the failure to warn of hidden hazards because a warning would prevent exposure of firefighters to unnecessary risks. *Id.* We also explained that Corby's violation of the building code may subject him to liability if Clark can show at trial that firefighters are within the class of persons the ordinance was created to protect. *Id.* at 300.

¶ 11. The next firefighter's case distinguished *Clark* and limited it to its facts by explaining that the duty of a landowner is not solely to warn of hidden hazards, but also to warn of any hazard of which the landowner is aware. *Wright v. Coleman*, 148 Wis. 2d 897, 909, 436 N.W.2d 864 (1989). In *Wright*, the firefighter was injured on a patch of ice on the homeowner's driveway caused by the homeowner's son washing a car. *Id.* at 900. We concluded that Coleman had a duty of ordinary care "under the circumstances" and that duty

548

included warning of the ice on the driveway. *Id.* at 898. And, although we noted that at times public policy factors preclude liability, we concluded, without discussion, that none were relevant to Wright's claims. *Id.* at 908.

¶ 12. We next limited the class of persons who could raise the public policy shield underlying the firefighters rule when we concluded that a manufacturer of a defective product could not employ it to obviate liability for the explosion of a defective product that injured a firefighter. *Hauboldt v. Union Carbide Corp.*, 160 Wis. 2d 662, 467 N.W.2d 508 (1991). We reasoned that the policies underlying the firefighters rule would not be furthered by limiting liability for manufacturers of defective products. *Id.* at 675. For example, the burden on the manufacturer would not be increased by permitting liability for personal injuries that resulted from the explosion of a defective product, over the burden a manufacturer already has for injuries caused by its defective products. *Id.* at 675–76. We explained that "public policy demands that responsibility be fixed wherever it will most effectively reduce the hazards to life and health inherent in defective products that reach the market." *Id.* at 677 (citations omitted). We concluded that Union Carbide was in a better position than a firefighter to effect changes that would benefit society. *Id.*

¶ 13. We recently examined whether public policy precludes liability to an emergency medical technician (EMT) who injured his back as a result of an awkward position he maintained in order to safely extract an injured passenger from one of the autos involved in an accident. *Pinter v. American Family Mut. Ins. Co.*, 2000 WI 75, ¶ 8, 236 Wis. 2d 137, 613 N.W.2d 110. Pinter sued the drivers for their negligence in bringing about

549

the accident. *Id.*, ¶ 9. Although Pinter directed our attention to contrary decisions from other jurisdictions,[8] *id.*, ¶ 34, we affirmed the public policy underpinnings that supported *Hass* and denied liability. *Id.*, ¶ 47. We reasoned that, as in *Hass*, permitting an EMT to sue for injuries he received when aiding a person injured in a car accident would place too unreasonable a burden on drivers who negligently cause accidents. *Id.* Underlying our decision was the concern that burdening the negligent party with liability could deter him from summoning necessary aid and that could have a detrimental effect on all who use Wisconsin's highways. We also reasoned that allowing Pinter to proceed for his injuries based on the negligence that caused the accident to occur would enter a field with no sensible or just stopping point and that his injury was too remote from the negligence that caused the accident. *Id.* And finally, we emphasized "the only negligence Pinter complains of

---

[8] There has been movement in other jurisdictions, both at the time of *Pinter v. American Family Mutual Insurance Company*, 2000 WI 75, 236 Wis. 2d 137, 613 N.W.2d 110, and since, to abolish or significantly limit the firefighters rule. *See id.*, ¶ 34 ns. 7, 8. *See also Holmes v. Adams Marine Ctr.*, 2000 Me. Super. Lexis 162 at *7 (stating that adopting the firefighters rule would not be logical and that "formulation of such a broad exclusion to a common-law cause of action" should be left to the legislature); *Giuffrida v. Citibank Corp.*, 790 N.E.2d 772, 775 (N.Y. 2003) (stating that previous cases that have applied the rule have been superceded as "the legislative response has been clear, consistent and undoubtedly in the direction of doing away with the firefighter's rule"); *Minnich v. Med-Waste, Inc.*, 564 S.E.2d 98 (S.C. 2002) (finding the rule "riddled with exceptions," often criticized, and not part of that state's common law); N.J. Stat. Ann. § 2A:62A-21 (West 2003) (effective 1994, granting right of recovery even for negligent conduct); Va. Code. Ann. § 8.01–226 (requiring an ordinary duty of care).

is the same negligence that caused the initial emergency and resulted in rescue personnel being called to the scene." *Id.*, ¶ 50.

## C. The Certified Question

¶ 14. Cole sued the Hubanks under theories of common law negligence and a violation of the dog owner's statute, Wis. Stat. § 174.02, all based on dog bites she sustained from the Hubanks' dog that was running at large. She argues that we have repeatedly limited the firefighters rule, applying it to Pinter as an EMT to further the public good of promptly reporting accidents. She also argues that both firefighters and EMTs have specialized training and experience in rescue operations, whereas police officers do not. She contends that extending the rule to police officers could have the unintended consequence of extending it to a variety of public and private sector employees who are trained to provide aid and to confront danger.

¶ 15. Conversely, the Hubanks argue that the same public policy arguments that supported the original application of the rule support its extension to police officers. They rely on language in *Pinter* that says the rule "is an expression of public policy because it prohibits a firefighter from complaining about the negligence that creates the very need for his or her employment." *Pinter*, 236 Wis. 2d 137, ¶ 39 (internal quotations and citations omitted). They contend that the "need" for Cole's employment was capturing the stray dog and it was that act that brought about her injuries.

¶ 16. As with any review wherein we are asked to limit liability based on public policy factors, we begin by examining the circumstances of the case. Cole's claims

for dog-bite injuries are grounded in common law negligence and in a violation of Wis. Stat. § 174.02. The defense to her claims is grounded in public policy that according to our case law examines both who the plaintiff is and what claims the plaintiff makes. *See, e.g., Pinter,*[9] 236 Wis. 2d 137, ¶ 50, *Hauboldt,*[10] 160 Wis. 2d at 677, and *Hass,*[11] 48 Wis. 2d at 327. We begin with plaintiff Cole, who was acting as a police officer when she was injured.

¶ 17. Police officers, as with firefighters and EMTs, are employed to serve the public in times of trouble. However, even though Cole's occupation and its role in occasioning her to come in harm's way are relevant to the question certified, her job description is not dispositive of whether she may sue the Hubanks. As our opinions demonstrated in *Hass,* 48 Wis. 2d at 327; *Clark,* 75 Wis. 2d at 298–99; *Wright,* 148 Wis. 2d at 906–08; *Hauboldt,* 160 Wis. 2d at 675–76; and *Pinter,* 236 Wis. 2d 137, ¶ 50, the plaintiff's occupation is only one fact to be considered.

---

[9] "We emphasize that our public policy analysis is based on the fact that the only negligence Pinter complains of is the same negligence that caused the initial emergency and resulted in rescue personnel being called to the scene." *Pinter,* 236 Wis. 2d 137, ¶ 50.

[10] "The purpose of strict products liability is to ensure that the costs of injuries resulting from the use of a defective product are borne by the manufacturer who placed the defective product on the market, rather than by the injured person." *Hauboldt v. Union Carbide Corp.,* 160 Wis. 2d 662, 677, 467 N.W.2d 508 (1991).

[11] "We do not hold a landowner under no circumstances must respond in damages for his negligence which caused injury to a firefighter ...." *Hass,* 48 Wis. 2d at 327.

¶ 18. There are many differences between firefighters and police officers. For example, firefighters know they are exposed to danger when they are called to fight a fire. As we noted in *Hass*, "[t]he call to duty is the warning of the hazard." *Hass*, 48 Wis. 2d at 325. By contrast, police officers usually are out on patrol from the start of their shift until its end. Their efforts are not directed to one hazard, but rather they are often required to address varied circumstances, the responses to which may not always be apparent simply from the fact that they are police officers. Furthermore, firefighters and EMTs receive specialized training in fighting fires and in moving injured people at the scene of an accident, on a regular basis.[12] While capturing stray dogs can fall within police officers' duties on occasion, they receive no specialized training to do so and it appears not to be a central focus of their day's activities. And finally, focusing too heavily on the plaintiff's occupation has the danger of permitting assumption of risk to be an absolute defense to a negligence claim, without expressly saying so.[13] Therefore, any limit on the right to sue may also evaluate relevant public policy concerns in light of the particular claims made. As we have explained above, the public policy factors are the basis of the firefighters rule; therefore, they form the basis for our analysis here. We now turn to Cole's claims.

---

[12] *See* Wis. Stat. § 146.50(9); Wis. Admin. Code § HFS 110.05, 110.07(3)(c); Wis. Admin. Code § COMM 30.07.

[13] Wisconsin no longer has assumption of risk as a bar to a negligence claim. However, assumption of risk is an element of contributory negligence, so that it is a consideration in a negligence claim. *Gilson v. Drees Bros.*, 19 Wis. 2d 252, 258, 120 N.W.2d 63 (1963).

### 1. Common law claim

¶ 19. Cole's claim for common law negligence is subject to common law defenses and proof problems. However, in order to evaluate the Hubanks' public policy defense, we assume the Hubanks were negligent and that their negligence was a cause of Cole's injuries and we focus on whether public policy requires that we affirm its dismissal. We conclude that the six public policy factors identified previously are not a limitation on liability for Cole's common law negligence claim.

¶ 20. First, Cole's injury was not too remote from the alleged negligence (the failure to adequately restrain the dog). Dogs that run at large have the obvious opportunity to bite that they would not have if properly restrained. Second, Cole's injury is not wholly out of proportion to the Hubanks' culpability. The dog was the Hubanks' responsibility. People who keep dogs must understand this and the legislature has enacted many provisions in ch. 174 to require dog owners to meet that responsibility. Additionally, an Akita is a large dog and therefore was capable of inflicting serious injury. Third, there is nothing "highly extraordinary" about the capability of an 85–pound dog running at large to cause serious harm if it attacks someone. Fourth, allowing the claim to go forward will not place too unreasonable a burden on the Hubanks. They are already required by city ordinance[14] and state statute[15] to restrain their dog

---

[14] *See, e.g.*, Milwaukee Code ch. 78.

[15] *See* Wis. Stat. ch. 174, regarding dogs. In addition to holding dog owners strictly liable for damage occasioned by their dogs, ch. 174 also requires dog owners to license their pets and keep their dogs from running at large. *See* Wis. Stat. §§ 174.042, 174.07.

554

so that it does not cause injury. Additionally, the Hubanks did not report their dog missing, nor warn law enforcement that it could be vicious. Permitting Cole's claim will encourage dog owners to shoulder their responsibilities to the public at large, by exercising care to adequately restrain their dogs. Dog owners are in a better position to prevent harm from their dogs. Fifth, allowing Cole's claim will not open the way for fraudulent claims. It will be easy enough to prove whether the Hubanks' Akita bit Cole. Sixth, allowing liability will not be tantamount to entering a field with no sensible or just stopping point. To the contrary, allowing liability in circumstances where police officers are trying to collect dogs running at large is supported by ordinance and statute. Failure to comply with ordinances and statutes can be deterred by imposing personal liability on dog owners. Otherwise, we could be "open[ing] the door to expansive immunity from liability." *Hauboldt,* 160 Wis. 2d at 676. Accordingly, we conclude that none of the public policy factors preclude Cole's common law claim. We next examine Cole's statutory claim.

2. Wisconsin Stat. § 174.02

¶ 21. Cole also brings suit under Wis. Stat. § 174.02(1)(a),[16] "Owner's liability for damage caused by a dog." The Hubanks ask us to apply common law public policy factors to bar Cole's statutory claim. This raises two central questions: (1) Whether the common law

---

[16] Wisconsin Stat. § 174.02(1)(a) provides in relevant part:

(1) LIABILITY FOR INJURY. (a) ... Subject to s. 895.045 and except as provided in s. 895.57(4), the owner of a dog is liable for the full amount of damages caused by the dog injuring or causing injury to a person, domestic animal or property.

public policy factors that we reviewed in Cole's common law claim may be applied to her statutory claim; and (2) if so, whether they should be applied here.

¶ 22. Wisconsin Stat. § 174.02 is a "strict liability" statute wherein the legislature has made the policy choice to place the burden of damage caused by a dog on the dog's owner. *See Becker,* 141 Wis. 2d at 815; *Fifer v. Dix,* 2000 WI App 66, ¶ 12, 234 Wis. 2d 117, 608 N.W.2d 740. We recently have examined § 174.02 in light of the six public policy factors that may be used to preclude liability. *Fandrey v. American Family Mut. Ins. Co.,* 2004 WI 62, 272 Wis. 2d 46, 680 N.W.2d 345. In *Fandrey,* we reviewed the statutory phrase, "damages caused by the dog," and concluded that the statutory term, "cause," means a cause-in-fact of the damages sustained. *Id.,* ¶ 21. However, in order for a dog owner to be liable, a sufficient legal cause, as well as a cause-in-fact, must be shown. *Id.* The public policy factors provide a means for the court to determine, on a case-by-case basis, whether a cause-in-fact of damages is also a sufficient legal cause to hold a dog owner liable. *Id.,* ¶¶ 19, 21. Therefore, the answer to the first question posed above is that the public policy factors may be applied to claims made against a dog owner pursuant to § 174.02.

¶ 23. In regard to whether those factors should be applied to bar Cole's claim here, we conclude they should not be applied. As we explained when we examined the six factors in light of Cole's negligence claim, none of the inequities that the factors are designed to protect against come into play under the facts of this case. Accordingly, we conclude that Cole may proceed upon her statutory claim as well as on her common law claim.

## III. CONCLUSION

¶ 24. Because we conclude that public policy reasons do not support extending the firefighters rule to police officers, Cole may sue for injuries she received allegedly because of the Hubanks' dog's attack that occurred during the course of Cole's duties as a police officer. Accordingly, we reverse the judgment and remand for further proceedings.

*By the Court.*—The judgment of the circuit court is reversed, and the cause remanded.

¶ 25. DIANE S. SYKES, J. (*dissenting*). The facts of this case fall well within the so-called "firefighter's rule," which this court first recognized as a function of Wisconsin's public policy limitations on tort liability in *Hass v. Chicago & North Western Railway,* 48 Wis. 2d 321, 179 N.W.2d 885 (1970), and recently extended to emergency medical technicians in *Pinter v. American Family Mut. Ins. Co.,* 2000 WI 75, 236 Wis. 2d 137, 613 N.W.2d 110. *Hass* held that "one who negligently starts a fire is not liable for that negligence when it causes injury to a firefighter who comes to extinguish the blaze." *Hass,* 48 Wis. 2d at 327. The court concluded that to impose liability for the act of negligence which occasioned the need for the firefighter's services—the negligence "in starting a fire and failing to curtail its spread"—would impose too great a burden on the property owner and "would permit the law of negligence to 'enter a field that has no sensible or just stopping point.' " *Id.* (quoting *Colla v. Mandella,* 1 Wis. 2d 594, 598–99, 85 N.W.2d 345 (1957)).

¶ 26. More recently, in *Pinter,* this court extended the "firefighter's rule" of *Hass* to emergency medical technicians, precluding liability on public policy

557

grounds against a motorist for negligently causing a collision to which the EMT responded and sustained injury while rendering emergency services at the accident scene. *Pinter,* 236 Wis. 2d 137, ¶ 48. We stated in *Pinter* that "[f]undamentally, the rule recognized in *Hass* is an expression of public policy because it prohibits a firefighter from complaining about the negligence that creates the very need for his or her employment." *Id.,* ¶ 39 (citation omitted.) We emphasized that "[p]ermitting firefighters to pursue actions like the one in *Hass* is . . . not consistent with the relationship of the fire fighting profession to the public. . . It would contravene public policy to permit a firefighter to recover damages from an individual who has already been taxed to provide compensation to injured firefighters." *Id.*

¶ 27. This court observed in *Pinter* that EMTs, like firefighters, "know that they will be expected to provide aid and protection to others in these hazardous circumstances" and "have special training and experience that prepare them to provide assistance under dangerous emergency conditions." *Id.,* ¶ 43. Noting that "an automobile collision is equivalent to a fire under the public policy analysis in *Hass*," we concluded:

> In sum, we can find no logical reason that the public policy analysis set forth in *Hass* should not extend to Pinter's cause of action. Instead, we conclude that public policy bars Pinter's recovery. In the same way that allowing a firefighter to recover in *Hass* would have placed an unreasonable burden on the railroad company that negligently caused the fire, permitting an EMT to recover under the circumstances alleged by Pinter would place an unreasonable burden on drivers who negligently cause collisions. . . . Permitting Pinter's action to proceed would enter a field with no sensible or just stopping point.

*Id.,* ¶¶ 46–47.

¶ 28. We were careful to emphasize in *Pinter* that "our public policy analysis is based on the fact that the only negligence Pinter complains of is the same negligence that caused the initial emergency and resulted in rescue personnel being called to the scene" and that "*Hass* would not bar Pinter's cause of action if Pinter sought recovery on the basis of some act or omission other than the initial negligence that necessitated emergency medical assistance," that is, on some "secondary or aggravating negligence." *Id.,* ¶¶ 50, 48.

¶ 29. I do not disagree that the *Hass* rule was "narrowly drawn." Majority op., ¶ 7. In my view, however, *Pinter*'s analysis of the "firefighter's rule" of *Hass,* which in essence is a particularized application of public policy limitations on tort liability, controls this case. I do not share the court's view that "[t]here are many differences between firefighters and police officers" which distinguish this case from *Hass* and its underlying public policy rationale. Majority op., ¶ 18. Police officers, like firefighters and EMTs, are expected to provide aid and protection to the public in dangerous situations, and are trained and experienced emergency responders.

¶ 30. To allow tort recovery for the acts of negligence which caused the need for a police officer's services in the first place—as opposed to some secondary or aggravating act of negligence—would place too great a burden on members of the public who are entitled to rely on police protection, and would enter a field in which there is no just stopping point. Here, Officer Cole seeks to hold the dog owners liable for the risks associated with their dog running at large, that is, for the negligence that precipitated the need for the officer's assistance, rather than any collateral act of

559

negligence. The officer's duty required her to respond and attempt to remedy the danger. Pursuant to *Hass* and *Pinter*, public policy therefore precludes the officer from recovering tort damages against the members of the public whose negligence created the need for that response. Accordingly, I respectfully dissent.