LAMB ET AL., PARTNERS, D. B. A. KNOX OIL CO., *v.* SEBACH.

(Decided March 4, 1935.)

*Messrs. Arnold, Wright, Purpus & Harlor, Mr. Earl F. Morris* and *Mr. Columbus Ewalt,* for plaintiffs in error.

*Messrs. Harrison & Marshman,* for defendant in error.

SHERICK, J. This is an action originally instituted by Henry Forest Sebach for damages against the members of the partnership known as the Knox Oil Company. At the time of injury the plaintiff, Sebach, was engaged as a city fireman, and in the regular course of his duty was attending a fire upon the premises of the defendants. It is claimed that he was grievously injured by reason of a hidden and concealed danger concerning which he was given no notice or warning, and that this was the proximate cause of his injury. On the other hand it was then and is now maintained by the defendants that as owners of the premises they were not obligated to so keep their property that the plaintiff, a mere licensee, would not be injured thereon, and that they owed him no duty further than to refrain from doing a wilful or wanton act which might cause him injury, and, further, to give him reasonable warning of a dangerous condition created by the active negligence of the owners, of which they had knowledge and which was unknown to and not discoverable by Sebach. It is urged in defense that the proximate cause of injury was the likelihood of a gasoline storage tank explosion, which did occur; that this possibility was open and apparent to the plaintiff; and that he knowingly put himself in a place of danger and assumed the risk of that which did occur. It is also urged that the plaintiff or his chief was notified in time to withdraw from the dangerous situation. It should here be stated, however, that no claim is made of wilful or wanton negligence, wherefore that question is not present in this controversy.

Upon submission of the cause to the jury a verdict was rendered in favor of the plaintiff fireman, and of this verdict and the judgment thereon entered the partners, as plaintiffs in error, now complain in several respects.

It appears that this cause has previously been twice

tried, that in each instance the jury was in disagreement, and that when the cause was called for trial for a third time the plaintiff was not present. Thereupon the court dismissed the cause. The journal entry of dismissal as prepared by defendant's counsel recites in part that the action is hereby "dismissed for failure to prosecute," at plaintiff's costs. Thereafter, under favor of Section 11233, General Code, the plaintiff commenced the present action within the year. It is claimed by the partners that the plaintiff's failure to appear was an abandonment of the cause of action and not a failure otherwise than upon the merits of the cause, and that hence this action was barred by the statute, that their motion for dismissal should have been sustained, and that the trial court erred in overruling the same.

The ruling of the court thereon was right. Two significant facts conclusively establish the correctness of the court's ruling. It is beyond dispute that a court of record speaks only through its journal entries. If the entry of dismissal "by the court" did not speak the truth, the defendants made no effort to seek its modification. Its veracity is sought to be impeached by the testimony of the court bailiff, in a telephone communication at the time of dismissal, to the effect that he abandoned his cause. This is not the proper way to question the correctness of an entry. Its modification should have been sought in proper fashion. There is no error in the respect claimed.

It is next urged that the trial court erred in its refusal to direct a verdict in favor of the partnership. This claimed error has necessitated a perusal of the voluminous record now before us. We shall not attempt to fully review the evidence, but shall make brief comment on certain pertinent facts which seem to us to furnish a conclusive reason why submission of this cause to the jury was mandatory.

The proof made in this case establishes that this was a considerable fire, occurring on the defendants' property in close proximity to four certain gasoline storage tanks located thereon, three of which were of 10,000 gallon capacity, half filled at the time and thereby usually presumed to be dangerous in case of fire. The record further discloses that a custom existed, known to the defendants, that tanks of this capacity were usually made and used with not less than a two-inch vent for the escape of gas generated from the gasoline therein, and that any considerable lessening of the apperture was dangerous. It appears further that a deputy state fire marshal had some months previous inspected these tanks and had discovered that one of the partners had reduced these vents to an opening of three-eighths of an inch, and that such reduction reduced the effectiveness of these vents as a safety device 97 per cent, and made the tanks dangerous. It is shown that defendants did this to prevent wastage of gasoline. At the time of this inspection, and in the presence of the fire marshal, the operating partner, Hart, removed these reducers, restoring the vent to the size that known custom demanded for safety.

It next appears that upon a second inspection, one day after the fire, all four tanks save the tank called No. 1, which was nearest the fire, had three-eighth inch vents thereon. Tank No. 1 at the time of the fire was open with a two-inch vent. This tank did not explode even with the fire and intense heat under and above it. It is shown that gas escaped from this vent in great quantities and burned at the top, which the firemen were able to put out with a stream of water directed against it, that the next tank to it was Tank No. 2, which tank did explode. It broke at an end and sprayed burning gasoline about and upon the plaintiff and others who were a considerable distance

away playing water on and about the tanks for the purpose of stopping the spread of the fire and to keep down the heat.

It is in evidence that fires may be lighted under gasoline tanks without danger; that the tanks may be boiled dry if the tanks are properly and sufficiently vented. It is proved that Hart had told the plaintiff's superior that the tanks were vented sufficiently; that Hart had urged the plaintiff and other firemen to continue to fight the spread of the fire, and that there was no danger; that Hart helped to fight it, but that after it spread under the second tank he turned and ran, exclaiming, "Get out of here," or words to that effect. It is not shown that this notice or warning was effective; or that it was heard by or communicated to the plaintiff or other firemen or their superior.

Under this state of the proof it surely was a question of fact for the jury to determine whether it was or was not the affirmative act of the defendants in restricting the size of the vent on Tank No. 2 that caused the plaintiff's injury, and which was the proximate cause thereof.

It is claimed that the court erred in the admission of two paragraphs from a certain book distributed by the state fire marshal. The matter pertained to the size of vents on gasoline tanks. We see no error in this respect. It was only admitted for a limited purpose; that is only as it affected the question of general custom. If it was erroneous in any respect, no exception was taken to its admission.

The defendants further complain of error in the giving of certain special requests at the instance of the plaintiff. It is also urged that the general charge is erroneous in part. We have carefully examined the charges as given and we are unable to find that any parts thereof are or were prejudicial to the rights of the plaintiffs in error.

Finding no error present, the judgment will be and hereby is affirmed.

*Judgment affirmed.*

LEMERT, P. J., and MONTGOMERY, J., concur.