[No. 43-40217-2.   Division Two.   February 11, 1970.]

CORA I. STRONG *et al., Appellants,* v. SEATTLE STEVEDORE
COMPANY, *Respondent.*

*Donald H. McGavick,* for appellants.

*Paul A. Goodin,* for respondent.

ARMSTRONG, C. J.—Plaintiffs appeal from a judgment for
the defendant in the jury trial of an action for the wrongful

death of their husband and father, Arthur Strong, a Tacoma fireman. The decedent died while fighting a fire at Pier 7 in the Port of Tacoma on July 14, 1963.

The question presented in this case is one of first impression in the state of Washington. It is, can a municipally paid fireman recover damages for injuries received while fighting a fire in the course of his duties?

On the day of the fire the defendant, Seattle Stevedore Company, was engaged in loading logs on a ship berthed at Pier 7. Defendant was in charge of the longshoring gang involved in the loading. To facilitate this operation defendant used a gantry crane No. 18 which it rented from the Port of Tacoma. The crane could be moved up and down the length of the pier on rails affixed to the pier. The crane's electrical power was furnished by means of a large electrical cable. The cable was kept manageable by means of a reel on the crane.

On the day of the fire at about 12 noon a problem developed with the reel. It was not properly taking up or winding the cable causing it to be spilled out on to the pier. A foreman of defendant company worked with the crane operator until 1 p.m. in an attempt to correct the problem. At 1 p.m. the crane operator went to lunch and returned at 2 p.m. Thereafter he operated the crane without the immediate presence and assistance of the foreman. The crane apparently operated normally until about 2:20 p.m. when the reel again malfunctioned. Excess cable lying on the pier was pinched by the crane's wheels. The resultant electrical arcing started a fire in the pier beneath the immobilized crane. Defendant's employees shut off the electrical power to the crane, called the Tacoma Fire Department for assistance and attempted to extinguish the fire with water. The pier was newly constructed of heavily creosoted planks causing a very hot, smokey fire.

The decedent was battalion chief of the first unit of the Tacoma Fire Department to arrive at the scene of the fire. When the chief of the Tacoma Fire Department arrived at the scene the decedent was preparing to free ships tied to

the pier. The fire chief directed him to continue with his efforts. The decedent was last seen alive going into heavy smoke to free the ships. The parties stipulated that he died as a result of the fire.

Plaintiffs make five assignments of error raising three issues. Plaintiffs' first contention is that the trial court erred in refusing to allow the Tacoma Fire Chief to testify as to the probability of injury to firemen fighting a major fire. This testimony was excluded as being based on the superior knowledge of the fire chief and on further reasoning that a longshoreman did not have such knowledge. The court determined that the question of foreseeability should be viewed from the position of a longshoreman and not from the position of a fire fighting expert. We agree.

Furthermore, the trial court had the discretion to determine that expert testimony was not necessary. The court could have considered, without expert testimony, that it is foreseeable to a person of ordinary experience and knowledge that pinching a cable carrying 440 volts of electrical power between a massive crane and the tracks on which it operates, damaging the insulation and exposing bare wire, creates a hazard of fire. We also think that a man of ordinary experience and knowledge could expect a fire on a wooden pier, coated with a wood preservative, to result in a serious and major conflagration, and that injuries and even death could result among those engaged in fighting such a fire. The court did not abuse its discretion in refusing to permit expert testimony on a subject which could be judged by persons of ordinary experience and knowledge.

The second issue raised by plaintiffs concerns the decedent's status on the property and the duty of care owed him by the defendant. Before reaching this question it is necessary to determine the status of the defendant in relation to the property. Our initial inquiry is whether defendant is a possessor of land. A definition is provided in Restatement (Second) of Torts § 328E. (1965):

Possessor of Land Defined

A Possessor of land is

(a) a person who is in occupation of the land with intent to control it or

(b) a person who has been in occupation of land with intent to control it, if no other person has subsequently occupied it with intent to control it, or

(c) a person who is entitled to immediate occupation of the land, if no other person is in possession under Clauses (a) and (b).

■ The defendant's business on Pier 7 in loading a ship necessitated the rental of a gantry crane from the Port of Tacoma. The trial court found that the crane was operated by an employee of defendant company and that his operation of the crane was supervised by a foreman also employed by defendant company. This is a factual matter which is not in dispute on appeal. While defendant was not responsible for the maintenance of the crane and its appurtenances it controlled the operation of the crane in loading the ship.

That the pier itself is real property is beyond question. Crane No. 18 is a gantry crane which moves about on the pier on rails which are integrated into the deck or surface of the pier. The crane's mobility on the pier is restricted to the length of the rails. Its power supply is furnished by the umbilical cord of the electric cable, thus further restricting its operation to the confines of the pier. The crane is not capable of movement off the pier or from one pier to another. The photographs and testimony reveal the great size, weight and mass of the crane. Because of a combination of all the foregoing factors we conclude for the purposes of this case that the gantry crane was affixed to and became a part of the pier.

The rental of the crane from the Port of Tacoma by the defendant and its operation by an employee of defendant under the supervision of another employee of defendant clearly indicates defendant's exercise of control over it. Defendant fits within the definition of a possessor of land.

Our next concern is the duty of care owed by the defendant possessor of land to the decedent fireman. The answer to this question turns upon the decedent's status on the property. The question of the status of a fireman fighting a fire has not been determined in the state of Washington. In determining this question of first impression we have turned to other jurisdictions. *See* Annot. 86 A.L.R.2d 1205 §§ 1 to 11 (1962). The majority rule is that a fireman is a mere licensee and is generally owed no care by the possessor of land except not to willfully or wantonly cause injury to him. Annot. 86 A.L.R.2d 1210-12 § 4(a) (1962). Other exceptions have been carved out of this general rule where liability for injuries to a fireman has been imposed upon the possessor of land. Liability has been imposed (1) where means of public access have not been maintained in a reasonably safe condition, (2) where there has been a failure to warn of unusual or hidden hazards, (3) where there is a breach or violation of a statutory duty, and (4) where there is active negligence. Annot. 86 A.L.R.2d 1217-20 §§ 8(b), 8(c), 9 and 10(a) (1962). The exceptions to the licensee characterization, which were created for the protection of firemen, seem to be generally applicable to the rights of firemen as invitees.

Other cases have held that the status of a fireman under the circumstances of the case at bar is *sui generis* and generally the fireman has not been allowed recovery. Annot. 86 A.L.R.2d 1212 § 4(c) (1962).

■ A minority of the cases reviewed have characterized the fireman as an invitee, thus creating a duty of reasonable care on the part of the possessor of land. *See* Annot. 86 A.L.R.2d 1212 § 4(b) (1962). *See also Dini v. Naiditch,* 20 Ill. 2d 406, 170 N.E.2d 881 (1960). We think that this is the better rule under the circumstances of this case. We think that the decedent was an invitee under the "economic benefit" test as stated in *McKinnon v. Washington Fed. Sav. & Loan Ass'n,* 68 Wn.2d 644, 649, 414 P.2d 773 (1966):

[A]n invitee is one who is either expressly or impliedly

invited onto the premises of another for some purpose connected with the business in which the owner or occupant is then engaged. To qualify as an invitee or business visitor under this definition, it must be shown that the business or purpose for which the visitor comes upon the premises is of actual or potential benefit to the owner or occupier thereof.

The decedent was present at the scene in his capacity as a fireman. There was at least a potential economic benefit to be derived by the defendant in the decedent's presence. The potential benefit to defendant was to save the pier from destruction by fire. The saving of the pier would result in the continued operation of defendant's business in the loading and unloading of ships at that pier. The decedent's objective was to extinguish the fire to save the pier and failing that to prevent the spread of the fire in order to protect life and other property. That it might have been necessary to allow destruction of the pier to protect other property is of secondary consequence.

The trial court applied the majority rule which relates to the duty of a possessor of land to a licensee. Since we have found that the proper status was that of an invitee we find that it would have been error to fail to instruct the jury relative to the duty of care owed an invitee by a possessor of land, if in fact a duty was proven by the facts of this case. Plaintiffs' evidence was substantial to support a determination that decedent was an invitee under the economic benefit test which has long been recognized as the proper test for an invitee in our state. In *McKinnon v. Washington Fed. Sav. & Loan Ass'n, supra,* the invitee rule was broadened to include the "public invitation" test. Instructions defining an invitee and concerning the duty of reasonable care owed by a possessor of land to an invitee should have been presented to the jury, if there had been a jury question presented in this case.

The plaintiffs' final contention is that the trial court erred in giving to the jury its instructions Nos. 3 and 9 necessitating a finding of wanton misconduct on the part of

defendant in order to allow recovery to plaintiffs. These instructions are consonant with a determination of the decedent's status as a licensee. For the reasons stated above in our discussion of plaintiffs' second contention as to the decedent's status as an invitee, such instructions would be error.

■ After determining the decedent fireman's status as an invitee, there still remains the hurdle of notice or knowledge. In general, where the negligence of a possessor of land is predicated on a failure in maintaining reasonably safe conditions for an invitee, it must be shown that the possessor of land had knowledge superior to that of the invitee concerning the dangerous conditions on the premises which caused the injuries and that the possessor knew or should have known of such dangerous conditions. *Placanica v. Riach Oldsmobile Co.,* 53 Wn.2d 171, 332 P.2d 47 (1958).

The pier was afire when the decedent arrived at the scene. The circumstances of the fire were readily apparent to him. We cannot say that the defendant had superior knowledge of the dangerous conditions. If anybody had superior knowledge of the dangerous conditions and risks involved, it was the decedent as a fireman. The conditions and materials of the pier's construction and its susceptibility to fire, while to some degree within the common knowledge expected of the defendant's employees, was within the special province of the decedent's expert knowledge. The pier's wooden construction was apparent to all. That the planks of which it was constructed were creosoted may also have been known to defendant's employees. From the smoke's color and odor the creosote treatment of the pier would be obvious to a fireman. That the piers were constructed of creosoted timbers for preservation against the ravages of salt water, we think was a matter of common knowledge to a fireman. That creosote causes a more hazardous fire is also a matter within a fireman's expert knowledge.

The negligence had occurred and the obviously danger-

ous condition of the fire was in existence when the decedent arrived at the scene. The decedent's knowledge of the dangerous conditions was superior to that of defendant's employees. On this basis recovery must be denied plaintiffs.

In this case we find none of the exceptions to the harsh licensee rule which were created to modify that rule and afford more protection to a fireman. As previously stated, these exceptions, if proven, may amplify the duty of care owed a fireman under the invitee rule.

Under the law governing the duties owed to an invitee in this jurisdiction and the facts of this case, we find no breach of duty owed to the decedent fireman. The trial court should have directed a verdict for defendant.

Judgment of dismissal is affirmed.

PEARSON and PETRIE, JJ., concur.