Michelle B. CARPENTER and David G. Carpenter, Sr., Plaintiffs,

v.

Ralph O'DAY, Individually and as Guardian Ad Litem of Brian O'Day, a minor, Trina Russell, Individually and as Guardian Ad Litem of Charles D. Russell, a minor, and Windjammer II, Inc., a Delaware corporation, Defendants.

Superior Court of Delaware, New Castle County.

Submitted: Jan. 6, 1987.
Decided: July 18, 1988.

Eliot Alazraki, Wilmington, for plaintiffs.

John A. Elzufon, and Edward A. Tarlov, of Elzufon & Associates, Wilmington, for defendant, Windjammer, II, Inc.

OPINION

POPPITI, Judge.

This is an action by Michelle B. Carpenter ("Carpenter") and her husband, David G. Carpenter, Sr., to recover for personal injuries sustained by Carpenter in the course of fighting a fire on October 26, 1982 at the Windjammer II Restaurant located in New Castle, Delaware. At the time of the fire, Carpenter was a volunteer firefighter with the Wilmington Manor Volunteer Fire Company. One of the defendants, Windjammer II, Inc. ("Windjammer"), now moves for summary judgment, urging this Court to adopt the "Firemen's Rule," which bars firefighters from recovering from private parties for injuries sustained in the course of carrying out their professional duties. For the reasons that follow, I adopt the Firemen's Rule, and grant defendant's motion for summary judgment.

The Windjammer restaurant ceased operations in July, 1982, and was vacant from July 18, 1982 to October 26, 1982, the date of the fire. The fire was intentionally set by defendants Brian O'Day and Charles D.

Russell. The defendant-arsonists gained entry to the restaurant through a side door which was left open as the result of a burglary which had occurred one or two days before October 26th. Windjammer had no notice of the burglary or of any threats of fire or vandalism prior to the fire.

The Wilmington Manor Volunteer Fire Company was dispatched to the restaurant to fight the fire. Carpenter was one of the firefighters who responded to the fire. Upon arriving at the scene of the fire, Carpenter put on a mask and entered the restaurant. Pursuant to standard procedure, Carpenter was ordered to "rip" walls down to prevent the fire from spreading. This is a task she frequently performed. Carpenter squeezed in between two walls and began to push and pull at the plywood wall in front of her. In doing so, she sustained an injury to her back. As a result of that injury, she has received workmen's compensation benefits.[1]

Prior to the Windjammer restaurant fire, Carpenter had been a volunteer firefighter since March, 1977, and had responded to at least 200 fires a year. Carpenter testified in deposition that she was aware of the dangers involved in fighting a fire, indicating that it was second nature for her to enter a burning building to extinguish a fire, and that the risk of injury is the "farthest thing from her mind" when fighting a fire.

The facts reveal that five months prior to the October 26 fire, there had been one small fire at the Windjammer. It is undisputed that, at the time of the fire, the building was adequately equipped with 12 to 14 fire extinguishers distributed throughout the building, that it was free of trash and other debris which might act as fuel for a fire, and that all doors had been locked and secured.

Traditionally, the Fireman's Rule provided that an owner or occupier of land is not liable to a firefighter for injuries sustained during the discharge of the duties for which the fireman was called to the property. *Rishel v. Eastern Airlines, Inc.*, Fla. App., 466 So.2d 1136, 1138 (1985). *See* 17 Words & Phrases, *Fireman's Rule* 20–21 (Supp.1987–1988). Rather, the injured firefighter is limited to statutory remedies such as workmen's compensation. *Flowers v. Sting Security*, 62 Md.App., 116, 488 A.2d 523, 527–28 (1985), *aff'd, Flowers v. Rock Creek Terrace*, 308 Md. 432, 520 A.2d 361 (1987). While jurisdictions differ as to the formulation of the rule, the exceptions to the rule, and the rationale relied upon to support it, the rule, in some form, has been adopted in nearly every jurisdiction, *see, e.g., Kreski v. Modern Wholesale Electric Supply*, 429 Mich. 347, 415 N.W.2d 178 (1987); *England v. Tasker*, 129 N.H. 467, 529 A.2d 938 (1987); *Ingram v. Peachtree South, Ltd.*, 182 Ga.App. 367, 355 S.E.2d 717 (1987), and it is almost universally accepted that no liability to a fireman is imposed upon those who negligently cause a fire. Mueller, *Liability to the Public Servant—A Divided Approach to Duty*, 68 Ill.B.J. 333, 3350336 (1980); Note, *Landowners' Negligence Liability to Persons Entering as a Matter of Right or Under a Privilege of Private Necessity*, 19 Vand.L. Rev. 407, 419, n. 56 (1966). The rule is based principally on three legal theories: (1) The firefighters common law classification as a licensee, (2) assumption of the risk and (3) public policy concerns. In light of the importance of my decision to adopt the rule for this jurisdiction, each basis in support of the rule will be addressed *seriatum.*

### I. Common Law Land Entrant Classifications—Premises Liability

Traditionally, courts have applied the Fireman's Rule by utilizing the theory of common law premises liability. That is, the Court first determines the firefighter's "le-

---

**1.** Carpenter is entitled to workmen's compensation benefits pursuant to the election by the *Wilmington* Manor Volunteer Fire Company to be bound by the Delaware Workmen's Compensation Act. *See* 19 *Del.C.* § 2312 (1985). Moreover, despite her volunteer status, Carpenter is entitled to several benefits accorded salaried firefighters, such as a pension, *see* 16 *Del.C.* § 6651 *et seq.* (Supp.1986); line of duty death benefits, *see* 16 *Del.C.* § 6601 *et seq.* (Supp.1986) and an income tax credit, *see* 30 *Del.C.* § 1113 (1985).

gally defined [common law] status upon entering the land." Walker & Dunavant, *Liability of a Possessor of Premises to Public Officials for Physical Harm Caused by a Condition of the Premises—A Rule for Virginia,* 17 U.Rich.L.Rev. 467, 473 (1983). The landowner's duty is then established depending upon whether the firefighter is determined by the Court to be a business invitee or a licensee. *See* 62 Am.Jur.2d, *Premises Liability* §§ 102, 104 (1972 & Supp.1987).

Firefighters traditionally have been held to be mere licensees when they enter upon the land of an owner or occupier in order to perform their duties.[2] This is true even if the occupier has summoned the fireman to protect himself or his property. 5 F. Harper, F. James & O. Gray, *The Law of Torts* § 27.14, at 259 (2d ed. 1986) (citations omitted). The common explanation for this resulting classification is that because firemen are likely to enter at unforeseeable times, upon unusual parts of the premises, and under circumstances of emergency, reasonable care in preparing for the visit cannot be expected, and a duty to make the premises reasonably safe for them at all times would constitute a severe burden upon the landowner. *Shypulski v. Waldorf Paper Products Company,* 232 Minn. 394, 45 N.W.2d 549 (1951); *Boneau v. Swift & Co.,* Mo.App., 66 S.W.2d 172

(1934); F. Bohlen, *Studies in the Law of Torts* 193–194 (1926). *See also* Note, *Torts: Landowner's Common Law and Statutory Liability to Firemen for Negligent Maintenance of Premises: Dini v. Naiditch,* 47 Cornell L.Q. 119, 121 (1961).

As licensees who enter under a privilege conferred by law, landowners or occupiers would therefore owe firefighters no duty of reasonable care to make the premises safe. W. Keeton, D. Dobbs, R. Keeton & D. Owen, *Prosser and Keeton on Torts* § 61, at 429–430 (5th ed. 1984) ("W. Keeton"). Although the occupier is still required to refrain from injuring the firefighter either intentionally, or by willful or wanton misconduct,[3] and he must exercise reasonable care for the firefighter's protection in carrying on his duties, and give warning of hidden dangers of which he knows,[4] the occupier generally has no obligation to inspect or prepare the premises for the firefighter. W. Keeton, § 61, at 430; Note, *Torts—Negligence—Duty of Care Owed Firemen,* 47 Iowa L.Rev. 200, 201–202 (1961). *See generally* Bohlen, *The Duty of a Landowner Towards Those Entering His Premises of Their Own Right,* 69 U.Pa.L.Rev. 142 (1921).

A great deal of dissatisfaction has been voiced by both courts and commentators regarding the fictional approach of classi-

**2.** *See, e.g., Moravec v. Moravec,* 216 Neb. 412, 343 N.W.2d 762 (1984); *Aravanis v. Eisenberg,* 237 Md. 242, 206 A.2d 148 (1965); *Roberts v. Rosenblatt,* 146 Conn. 110, 148 A.2d 142 (1959); *Wax v. Co-operative Refinery Asso.,* 154 Neb. 805, 49 N.W.2d 707 (1951); *Burroughs Adding Mach. Co. v. Fryar,* Tenn.Supr., 179 S.W. 127 (1915); *Drake v. Fenton,* 237 Pa. 8, 85 A. 14 (1912); *Beehler v. Daniels,* 18 R.I. 563, 29 A. 6 (1894). *See also* Comment, *Duty of Landowner or Occupier to Firemen Discharging Their Duties,* 6 DePaul L.Rev. 97, 97–101 (1956); *Restatement (Second) of Torts* § 345, comment (c) (1965).

**3.** Under the circumstances of the following cases, courts have held that a fireman who enters upon premises in the discharge of his duty might recover against the owner or occupant for injuries received as a result of the "active negligence," or wanton and wilful conduct, of the owner or occupant. *See Mahoney v. Carus Chemical Co.,* 102 N.J. 564, 510 A.2d 4 (1986); *Calvert v. Garvey Elevators, Inc.,* 236 Kan. 570, 694 P.2d 433 (1985); *Berko v. Freda,* 93 N.J. 81,

459 A.2d 663 (1983); *Cameron v. Kenyon–Connell Commercial Co.,* Mont.Supr., 56 P. 358 (1899); *Lave v. Neumann,* 211 Neb. 97, 317 N.W.2d 779 (1982); *Krueger v. City of Anaheim,* 130 Cal.App.3d 166, 181 Cal.Rptr. 631 (1982); *Whitten v. Miami–Dade Water & Sewer Authority,* Fla.App., 3rd Dist., 357 So.2d 430 (1978); *Marquart v. Toledo, P. & W.R. Co.,* 30 Ill.App.3d 431, 333 N.E.2d 558 (1975); *Lamb v. Sebach,* 52 Ohio App. 362, 3 N.E.2d 686 (1935); *Bandosz v. A. Daigger & Co.,* Ill.App., 255 Ill.App. 494 (1930); *Houston B. & T.R. Co. v. O'Leary,* Tex. Civ.App., 136 S.W. 601 (1911).

**4.** In a number of cases, it has been recognized that an owner or occupier of the premises which firemen enter upon in discharge of their duties may be held liable to the fireman injured by hidden danger on the premises, where the owner or occupant knew of the danger and had the opportunity to warn the fireman of it. *See* collected cases, Annot: *Liability of Owner or Occupant of Premises to Firemen Coming Thereon in Discharge of His Duty,* 41 A.L.R.4th 597, § 9 (1982 and Supp.1987).

fying a firefighter as a "licensee" in order to support the application of the Fireman's Rule. *See, e.g.,* 5 Harper, James & Gray, § 27.14, at 259–270; Comment, *Torts—Are Firemen and Policemen Licensees or Invitees?* 35 Mich.L.Rev. 1157, 1159–1163 (1937); Note, *Torts—Landowner's Duty to Firemen,* 15 Ala.L.Rev. 313, 320–321 (1962). Many courts have therefore taken the view that, in the absence of statute, a firefighter is better characterized as an invitee, rather than a licensee, when he enters upon premises in the discharge of his duty.[5] These courts reason that a firefighter who comes to extinguish a blaze can fairly be said to confer a pecuniary benefit upon the landowner, and that if an invitation is legally required, it is certainly present when the firefighter comes in response to a call for help. W. Prosser, § 61, at 431. (Citations omitted). Other courts have rejected both the licensee and invitee classifications, and have stated that a fireman is *sui generis* for purposes of applying the rule.[6]

Although the Delaware Supreme Court has generally refused to abandon the common law premises liability categories as determinative of a landowner's duty to a land entrant on the theory that to do so would be to engage in "impermissible judicial legislation," *see Bailey v. Pennington,* Del.Supr., 406 A.2d 44, 48 (1979), *app. dism'd,* 444 U.S. 1061, 100 S.Ct. 1000, 62 L.Ed.2d 744, I am satisfied that these classifications are not appropriate for a firefighter, since he enters a premises as a matter of right pursuant to his public employment, and not as a member of one of these rigidly defined classes. *See* Moss, *An Examination of the California Fireman's Rule,* 6 Pac.L.J. 660, 660–661 (1975); Note, *Negligence—Acts or Omissions Constituting Negligence—Whether Landowners and Occupiers Owe Firemen and Policemen the Duty of Reasonable Care,* 38 Chi.Kent L.Rev. 75, 76 (1961).

I am therefore not persuaded to manipulate and strain these classifications in order to accommodate firefighters.[7] It is from the rejection of this land entrant classification scheme that other courts have adopted the Firemen's Rule based upon an assumption of risk and/or public policy rationale.

## II. Assumption of Risk

The second principal justification for the Fireman's Rule is based upon the principle of assumption of the risk. *See* Note, *Assumption of the Risk and the Fireman's Rule* 7 Wm.Mitch.L.Rev. 749, 768–779 (1981). Predicated on this theory, a number of courts have expanded the rule, and reasoned that firemen and other persons professionally trained to deal with dangerous situations on a regular basis, including

5. *See, e.g., Buckeye Cotton Oil Co. v. Campagna,* 146 Tenn. 389, 242 S.W. 646 (1922); *Dini v. Naiditch,* 20 Ill.2d 406, 170 N.E.2d 881 (1960); *Kreski v. Modern Wholesale Electric Supply Co.,* 151 Mich.App. 376, 390 N.W.2d 244 (1986); *Strong v. Seattle Stevedoring Co.,* 1 Wash.App. 898, 466 P.2d 545 (1970); *Horcher v. Guerin,* 94 Ill.App.2d 244, 236 N.E.2d 576 (1968); *Mistelske v. Kravco, Inc.,* Pa.Ct.Common Pl., 88 Pa.D. & C. 49 (1953). *See also* Note, *Torts—Negligence— Fireman in Performance of Duties Allowed Recovery as Invitee,* 14 Vand.L.Rev. 1541 (1961).

6. *See, e.g., Berko v. Freda,* 93 N.J. 81, 459 A.2d 663 (1983); *Buren v. Midwest Industries, Inc.,* Ky.Supr., 380 S.W.2d 96 (1964); *McCarthy v. Port of New York Authority,* 30 A.D.2d 111, 290 N.Y.S.2d 255 (1st Dept.1968).

7. In this regard, I strongly agree with Prosser, who said:

The courts have encountered considerable difficulty in dealing with those who come upon the land in the exercise of a privilege not conferred by the consent of the occupier.... [T]hese have consisted for the most part of public officers and employees, who enter in the performance of their public duties. Such individuals do not fit very well into any of the arbitrary categories which the law has established for the classification of visitors. They are not trespassers, since they are privileged to come. The privilege is independent of any permission, consent or license of the occupier, and they would be privileged to enter, and would insist upon doing so, even if he made active objection.... [S]ome writers, particularly in England, have advocated an additional and separate category for them. Thus far, however, the American courts always have proceeded to cram them, with some straining at the seams, into the sack of either licensees or invitees.

W. Prosser, *Handbook of the Law of Torts* § 61, at 395–396 (4th ed. 1971).

volunteer firefighters,[8] must be held to assume the normal, apparent risks that are to be expected in encountering such hazards, regardless of whether the risk was precipitated by the owner or occupier of the premises.[9] W. Prosser, § 61, at 430–431. A leading statement of the assumption of the risk rationale is contained in *Lipson v. Superior Court of Orange County,* 31 Cal.3d 362, 182 Cal.Rptr. 629, 644 P.2d 822, 827 (1982): "The fireman's rule is primarily based on the principle of law denominated assumption of risk. That principle holds that 'one who has knowingly and voluntarily confronted a hazard cannot recover for injuries sustained thereby.'" *See Christensen v. Murphy,* 296 Or. 610, 678 P.2d 1210, 1216 (1984); *Walters v. Sloan,* 20 Cal.3d 199, 142 Cal.Rptr. 152, 571 P.2d 609, 612 (1977). Delaware employs a similar definition of the assumption of the risk defense.[10]

### A. *Primary vs. Secondary Assumption of Risk*

Within the context of the Fireman's Rule, the principle of assumption of the risk is used in a unique sense. In this regard, it is necessary therefore to distinguish between "primary" assumption of the risk, which arises out of the special relationship between the firefighter and the public, and "secondary" assumption of the risk, which is the traditional affirmative defense on a case-by-case basis, and which closely resembles contributory negligence.

The distinction between these conceptually different varieties of assumption of the risk was made clear by 2 F. Harper & F. James, *The Law of Torts* § 21.1, at 1162 (1956):

"The term assumption of risk has led to no little confusion because it is used to refer to at least two different concepts, which largely overlap, have a common cultural background, and often produce the same legal result. But these concepts are nevertheless quite distinct rules involving slightly different policies and different conditions for their application. (1) In its primary sense the plaintiff's assumption of a risk is only the counterpart of the defendant's lack of duty to protect the plaintiff from that risk. In such a case plaintiff may not recover for his injury even though he was quite reasonable in encountering the risk that caused it. *Volenti non fit injuria.* (2) A plaintiff may also be said to assume a risk created by defendant's breach of duty towards him, when he deliberately chooses to encounter that risk. Hereafter we shall call this 'assumption of risk in a secondary sense.'" (Footnotes omitted)

A firefighter does not therefore assume a risk in the secondary sense, i.e.: hazard by hazard, fire by fire, and only when he lacks a safer alternative. Rather, he assumes it in the broad primary sense as an inherent incident of his occupation.[11] This special attribute of his occupational under-

---

**8.** *See Flowers v. Rock Creek Terrace,* 308 Md. 432, 520 A.2d 361 (1987) (volunteer fireman); *Buchanan v. Prickett & Son, Inc.,* 203 Neb. 684, 279 N.W.2d 855 (1979) (same); *Ferraro v. Demetrakis,* 167 N.J.Super. 429, 400 A.2d 1227 (1979) (same); *Baker v. Superior Court for County of Orange,* 181 Cal.Rptr. 311, 129 Cal.App.3d 710 (1982) (paid-call volunteer firewoman); *but see Walker Hauling Company v. Johnson,* 110 Ga. App. 620, 139 S.E.2d 496 (1964).

**9.** While there is little doubt that the fireman's rule originated in the land occupier cases, the rule is not limited to injuries suffered by firemen on land belonging to or occupied by the defendant. (Citations omitted.) *Grable v. Varela,* 115 Ariz. 222, 564 P.2d 911, 912 (1977).

**10.** If the plaintiff knows of the existence of risk, appreciates the danger of it and never-

theless does not avoid it, he will be held to have assumed the risk and may not recover for his injuries. *Yankanwich v. Wharton,* Del.Supr., 460 A.2d 1326, 1330 (1983); *Robinson v. Meding,* Del. Supr., 163 A.2d 272, 276 (1960).

**11.** *See C & O Railway Co. v. Crouch,* 208 Va. 602, 159 S.E.2d 650, 654, *cert. denied,* 393 U.S. 845, 89 S.Ct. 128, 21 L.Ed.2d 115 (1968): "The assumption of risk doctrine employed in fire cases does not depend upon the existence of a spirit of venturesomeness in the face of known danger, ... but rather upon the relationship between the firemen and the public, from which arises his obligation to accept the usual risks of injury in undertaking to suppress fires without regard to whether or not they are caused by negligence."

taking was well expressed by the court in *Spencer v. B.P. John Furniture Corp.*, 255 Or. 359, 467 P.2d 429, 431 (1970):

> Whatever choice a fireman makes about those dangers to which he will submit himself, such choice is necessarily made at the time he becomes a fireman. When he appears on the scene of a fire and realizes that the owner or possessor has created or permitted a situation which has enhanced the normal risks to be expected in fighting a fire of the kind involved, he does not have the privilege of refusing to fight the fire. He has to fight it anyway. When he becomes a fireman, he does not undertake to fight only ordinarily dangerous fires which have not been started or made more dangerous by someone's lack of care.

There is, however, under both the older land entrant rationale and the newer rationales for the Fireman's Rule, a universally recognized exception to that Rule. That is, a fireman does not assume all risks to which he may be exposed in the course of fighting a fire, but

> assumes only those hazards which are known or can reasonably be anticipated at the site of the fire....
>
> \* \* \* \* \* \*
>
> While the fireman's rule shields a defendant from liability for negligently or recklessly causing or for failing to prevent a fire, it does not provide protection to a defendant who commits independent acts of misconduct after the firefighters have arrived on the premises.

*Lipson v. Superior Court of Orange County*, 31 Cal.3d 362, 182 Cal.Rptr. 629, 635, 644 P.2d 822, 828–829 (1982) (citations omitted). Similar language is found in *Aravanis v. Eisenberg*, 237 Md. 242, 206 A.2d 148, 155 (1965), wherein the Court stated that

> [B]ecause of the nature of his duties, the fireman takes the property as he finds it, subject to the usual and ordinary hazards to which firemen are ordinarily exposed.... "The possessor of land must exercise reasonable care not to subject the fireman to unusual danger and to see that the fireman is aware of any such

unusual danger of which the landowner has knowledge and the fireman could not reasonably be expected to discover in the discharge of his duties." (Citations omitted).

Finally, see W. Prosser, § 61, at 431, in which the authors explained:

> Yet the fireman's rule has been held only to apply when the firefighter or police officer is injured from the very danger, created by the defendant's act of negligence, that required his professional assistance and presence at the scene in the first place, and the rule will not shield a defendant from liability for independent acts of misconduct which otherwise cause the injury. (Citations omitted).

## III. The Public Policy Rationale

Closely related to the primary assumption of risk analysis is the public policy rationale, which virtually has a different formulation in each jurisdiction that has articulated a public policy premise. A most forceful statement of the public policy rationale for the Fireman's Rule was developed in *Krauth v. Geller*, 31 N.J. 270, 157 A.2d 129, 130–131 (1960), in which the Court said:

> [I]t is the fireman's business to deal with that very hazard and hence ... he cannot complain of negligence in the creation of the very occasion for his engagement. In terms of duty, it may be said that there is none owed the fireman to exercise care so as not to require the special services for which he is trained and paid. Probably most fires are attributable to negligence, and in the final analysis the policy decision is that it would be too burdensome to charge all who carelessly cause or fail to prevent fires with the injury suffered by the expert retained with the public funds to deal with those inevitable, although negligently created, occurrences. Hence, for that risk, the fireman should receive appropriate compensation from the public he serves, both in pay which reflects the hazard and in workmen's compensation benefits for the

consequences of the inherent risks of the calling.[12]

*See also Pottebaum v. Hinds,* Iowa Supr., 347 N.W.2d 642 (1984) (Recovery should be denied to policemen and firemen whenever their injuries are caused by the very wrong that required the presence of the officer and subjected him/her to harm); *Berko v. Freda,* 93 N.J. 81, 459 A.2d 663 (1983) (Firefighters are maintained to confront the dangers of fire and, as such, in the absence of legislation, a citizen should not run the risk of civil liability for negligent acts that occasion their presence); *Steelman v. Lind,* 97 Nev. 425, 634 P.2d 666 (1981) (A public safety officer cannot base a tort claim upon damage caused by the very risk he is paid to encounter and with which he is trained to cope); *Walters v. Sloan,* 20 Cal.3d 199, 142 Cal.Rptr. 152, 571 P.2d 609 (1977) (Firemen cannot complain of negligence in the creation of the very occasion for their engagement); *Aravanis v. Eisenberg,* 237 Md. 242, 206 A.2d 148 (1965) (Compensation for injuries sustained in the fulfilment of duty is generally the obligation of society); *Scheurer v. Trustees of Open Bible Church,* 175 Ohio St. 163, 192 N.E.2d 38 (1963) (The benefit of the performance of the fireman duty is shared by all citizens of the community, likewise the burden of loss caused by injury should be shared by all citizens of the community through taxes); *Flowers v. Sting Security,* 62 Md.App. 116, 488 A.2d 523 (1985), *aff'd, Flowers v. Rock Creek Terrace,* 308 Md. 432, 520 A.2d 361 (1987)

(Societal responsibility in terms of compensatory benefits is the better, surer and fairer recourse for firemen injured in the line of duty).

## IV. The Delaware Rule

 In sum, while I reject the common law land entrant classifications as a rationale to support the Firemen's Rule, and while I see no good reason to create the legally fictitious distinction between primary and secondary assumption of risk, I conclude that, as a matter of public policy, firemen generally cannot recover for injuries attributable to negligence that requires their assistance. As such, the rule which I adopt is that a fireman may not recover when he is injured from the very risk, created by the defendant's act of negligence, that required his professional assistance and presence at the scene. While this policy is well grounded on the relationship between firemen and the public which calls on these specific public safety officers to confront certain hazards on their behalf, the policy would not dictate that firemen be barred from recovery for injuries in all circumstances. Negligent acts which would not be covered by the Firemen's Rule include the failure to warn the firemen of pre-existing hidden dangers where there is knowledge of the danger and an opportunity to warn,[13] acts which occur subsequent to the safety officer's arrival on the scene and which are outside of his anticipated occupational hazards,[14] and acts

**12.** *Accord,* Comment, *The New Minnesota Fireman's Rule—An Application of the Assumption of Risk Doctrine: Armstrong v. Mailand,* 64 Minn.L.Rev. 878, 887 (1980).

**13.** *See, e.g., Lipson v. Superior Court of Orange County,* 31 Cal.3d 362, 182 Cal.Rptr. 629, 635, 644 P.2d 822, 828 (1982) ("the risk that the owner or occupier of a burning building will deceive a firefighter as to the nature or existence of a hazard on the premises is not an inherent part of a firefighter's job"); *Terhell v. American Commonwealth Associates,* Cal.App., 172 Cal.App.3d 434, 218 Cal.Rptr. 256, 260 (1985) ("Having an unguarded hole in the roof was not the cause of appellant's presence at the scene, and the firefighter's rule has never been applied to negligence which did not cause the fire"); *Johnson v. Miller,* Minn.App., 371 N.W.2d 94, 96 (1985) ("While smoke and other related

conditions are risks reasonably to be anticipated by firefighters, a hole created by removal of a heating grate is not. That hole was a hidden or unanticipated risk"). *See also Clark v. Corby,* 75 Wis.2d 292, 249 N.W.2d 567 (1977) ("We find the modern trend and the better rule to be that owners and occupiers of land owe a duty to firemen to warn them of hidden perils, where the owner or occupant knows of the peril and has the opportunity to give warning of it").

**14.** As the court in *Flowers v. Rockcreek Terrace,* 308 Md. 432, 520 A.2d 361, 369 (1987), *quoting Aravanis v. Eisenberg,* 237 Md. 242, 206 A.2d 148 (1965), said, the firemen's rule does not apply "when the fireman sustains injuries after the initial period of his anticipated occupational risk, or from perils not reasonably foreseeable as part of that risk." Courts have often applied these principles to find that various fact situa-

of arson or similar intentional misconduct.[15]

■ Plaintiff asserts in substance that notwithstanding the various rationales underlying the Firemen's Rule, the "rescue doctrine" applies to this case. This doctrine, which has been recognized in Delaware, stands for the principle that one who is injured in reasonably undertaking a necessary rescue may recover from the person whose negligence created the hazard. *See Schwartzman v. Delaware Coach Co.,* Del. Super., 264 A.2d 519 (1970). A review of the rescue doctrine convinces me that it could not apply to the case *sub judice,* as the doctrine is inapplicable to professional rescuers. Comment, *Negligence Actions by Police Officers and Firefighters: A Need for Professional Rescuers Rule,* 66 Cal.L.Rev. 585, 594 (1978); *cf.,* Comment,

*Giorgi v. Pacific Gas and Electric Co.: The "Fireman's Rule" in California, An Anachronism?* 4 U.S.L.Rev. 125, 128–129 (1969).

■ There being no facts of record which would justify taking the case *sub judice* out of the application of Firemen's Rule as I have formulated it, Windjammer's Motion for Summary Judgment is HEREBY GRANTED.

IT IS SO ORDERED.

---

tions are outside the coverage of the fireman's rule. *See, e.g., Garcia v. City of South Tucson,* 131 Ariz. 315, 640 P.2d 1117 (1981); *Malo v. Willis,* 126 Cal.App.3d 543, 178 Cal.Rptr. 774, 778 (1981); *Griffiths v. Lovelette Transfer Co., Inc.,* Minn.Supr., 313 N.W.2d 602, 605 (1981); *Kaiser v. Northern States Power Co.,* Minn.Supr., 353 N.W.2d 899, 905 (1984); *Trainor v. Santana,* 86 N.J. 403, 432 A.2d 23 (1981); *Sutton v. Shufelberger,* 31 Wash.App. 579, 643 P.2d 920, 925–926 (1982).

**15.** *See, e.g., Grable v. Varela,* 115 Ariz. 222, 564 P.2d 911 (1977) (recognized arsonist exception

to fireman's rule); *Giorgi v. Pacific Gas and Electric Company,* Cal.App., 266 Cal.App.2d 355, 72 Cal.Rptr. 119, 123 (1968) ("We do not deal with the arsonist or with one who prankishly or maliciously turns in a false alarm"); *Krauth v. Geller,* 31 N.J. 270, 157 A.2d 129 (1960) (suggests arsonists fall within an exception to the fireman's rule).